**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**CIVIL ACTION NO. 04-12393(JGD)**

| | |
|---|---|
| **TRICORE, INC.** | : |
| | : |
| **VS.** | : |
| | : |
| **SAFECO INSURANCE COMPANY OF** | : |
| **AMERICA and R.P. IANNUCCILLO** | : |
| **& SONS CONSTRUCTION CO.** | : |

December 14, 2005

**MEMORANDUM OF LAW IN SUPPORT**
**OF R.P. IANNUCCILLO & SONS CONSTRUCTION CO.'S**
**OPPOSITION TO SAFECO INSURANCE COMPANY OF AMERICA'S**
**MOTION FOR SUMMARY JUDGMENT**

David M. Campbell (BBO #645512)
**Visconti & Boren, Ltd.**
55 Dorrance Street
Providence, RI 02903
(401) 331-3800 - Telephone
(401) 331-3800 - Facsimile

*Attorney for Defendant R.P. Iannuccillo &*
*Sons Construction Co.*

I.     **INTRODUCTION**

Pursuant to Rule 56.1 of the Local Rules of the United States District Court for the District of Massachusetts and Rule 56 of the Federal Rules of Civil Procedure, the Crossclaim Plaintiff, R.P. Iannuccillo & Sons Construction Co. ("RPI"), respectfully submits this memorandum of law in support of its opposition to Crossclaim Defendant, Safeco Insurance Company of America ("Safeco") motion for summary judgment together with the affidavits of Bruce R. Iannuccillo *(Attached Exhibit 1)*, president of RPI, and David M. Campbell *(Attached Exhibit 2)*, undersigned counsel to RPI.  RPI also relies upon the attached exhibits to the affidavits, the Rule 56.1 Statement of Disputed Material Facts and all pleadings and papers on file with this Court.

Safeco's motion for summary judgment concerns only Count II of the crossclaim filed by RPI against Safeco alleging violations of M.G.L. Chapters 176D ("Chapter 176D") and 93A ("Chapter 93A").  RPI disputes Safeco's contention that all other claims, counterclaims and crossclaims were disposed by a July, 2005 mediation before United States Magistrate Judge Swartwood.  At the time of filing, a proposed settlement agreement between Safeco and plaintiff, Tricore, Inc. ("Tricore") has not been executed and all claims are pending.  This dispute is not germane to the resolution of the subject motion.  However, Safeco's representation concerning all other claims is not true and accurate.

Safeco is not entitled to summary judgment with regard to RPI's Chapter 93A claim contained in Count II of the crossclaim because RPI has standing to assert its claim and RPI has alleged sufficient facts to sustain an action, as a matter of law, pursuant to Chapter 93A.  The allegations contained in the crossclaim together with the allegations in the attached affidavits provide a sufficient basis to establish liability pursuant to Chapter 93A.  Resolving Safeco's liability involves the resolution of genuine issues of material fact.

II.    **FACTS**

    A.    **SUBCONTRACT**

       1.    **Tricore Not Qualified for $17,000,000 Project.**

On or about February, 2002, RPI's bonding agent, Joseph Lane ("Lane") asked Bruce Iannuccillo ("Iannuccillo"), president of RPI, whether RPI would work on a project in Boston for another client of Lane's known as Tricore, Inc. Lane explained that the president of Tricore, Paul Jacobson ("Jacobson") had a good relationship with the owner of the project, Sherrill House, Inc. ("Owner"). The project involved the renovation and expansion of a nursing home facility known as "Sherrill House" ("the Project"). Lane requested that RPI submit a proposal for the concrete work to Tricore. Lane also requested that RPI provide 100% performance and payment bonds to Tricore identifying Tricore, the Owner and Sovereign Bank as obligees on the bonds.

The overall project budget was approximately $17,000,000 and Lane explained that Tricore did not have sufficient bonding capacity for the project and that Safeco was not comfortable providing full bonding to Tricore because Tricore had no experience with a project of this size. In addition to subcontractor participation on the surety bonds, Lane further explained that Safeco had another condition to providing surety bonds to Tricore on the project. Specifically, Safeco required that Tricore submit for Safeco's approval the name of a competent superintendent/project manager for the project. According to Lane, Jacobson submitted Peter Brady ("Brady"), Jacobson's father-in-law. Lane informed RPI that Brady had extensive experience as a construction superintendent for General Cinemas building multi-screen theaters around Massachusetts. Brady would perform multiple duties on the project including purchasing, project management, project engineering/surveying and project superintendence. Tricore would perform the excavation of the parking garage portion of the project including design and installation of the earth support system.

### 2.    Bad Start to Bad Relationship.

RPI submitted a proposal and subsequently entered into a subcontract agreement with Tricore dated April 25, 2002 to provide labor and materials in connection with the performance of the "cast-in-place" concrete work for the parking garage.  The subcontract was in the original amount of $863,497 and the scope of the work included foundations and footings, foundation walls, and slab on grade concrete floors and stairs together with related concrete work.  *(Defendant's Exhibit A).*  Safeco provided construction surety bonds, payment and performance to both RPI and Tricore.  *(Defendant's Exhibits B and C).*

Prior to beginning its work, RPI had two significant disagreements with Brady regarding the earth support system designed by Brady and installed by Tricore.  These disagreements were resolved in RPI's favor and unfortunately served to turn Brady against RPI immediately.  Specifically, RPI advised Brady that the earth support system was showing visual signs of weakening and was in grave danger of failing.  Ultimately, Brady agreed and Tricore was required to install lateral bracing at a significant cost.

Later, during the construction of the footings and walls, RPI's safety officer instructed RPI workers to stop working until additional bracing was installed by Tricore on the earth support system.  The bracing was installed and the RPI workers returned to the site.  Thereafter, RPI foreman repeatedly reported that Brady was unreasonable, disagreeable and impossible to satisfy.  Subcontractors retained by RPI to perform concrete flat work refused to complete their work because of Brady and his behavior.

### 3.    Indictment of Tricore Project Manager for Fraud and Tax Evasion.

RPI subsequently learned that Brady had been indicted on federal charges involving financial fraud and tax evasion arising from his duties as construction superintendent on various General

Cinemas projects in Massachusetts. Tricore removed Brady from the project and Brady was sentenced and incarcerated. Shortly thereafter, Lane contacted Iannuccillo and stated that Safeco was furious about the Brady charges and Safeco would have excluded Brady from serving as project superintendent had they known. At the same time, the regional bond manager for Safeco, Patricia Catanese, called Iannuccillo and inquired whether Iannuccillo had heard about the Brady charges. Iannuccillo told her that the information was in the local newspapers and the Brady charges were being discussed by many on the project site.

## B.     PERFORMANCE OF THE SUBCONTRACT

During the course of the work, disputes arose between RPI and Tricore regarding various payment and performance issues. By letter dated July 1, 2003, Tricore terminated RPI *(Defendant's Exhibit D)*. The notice of termination, speaks generally about RPI's failure to "provide work on the project in a good and workmanlike manner" and claims that RPI has delayed the progress of the project. These allegations are completely unsubstantiated and inaccurate. RPI and Tricore each allege that the other has breached the subcontract and each has filed a claim against the Safeco surety bond provided to the other. RPI claims that Tricore failed to produce progress schedules and updates; schedule and sequence the work; conduct regular project meetings; coordinate timely approval and payment for work completed; maintain a safe workplace; maintain separate entrance gates for union and open shop trade contractors; and permit subcontractors to complete their work without interference.

### 1.     RPI Completed its Work in Accordance with the Contract, Plans, Specifications and Industry Standards.

RPI is owed $124,368 for contract work and contract retainage for labor and materials provided on the project prior to termination. More specifically, RPI is owed $47,025 as reflected by pay application #11 and $77,343 for contract retainage for pay application 1 to 10. *(Defendant's*

*Exhibit E).*  At the time of its termination, RPI had completed and billed approximately 90% of its subcontract.  All previous applications for payment (10) had been paid in full subject to only retainage by Tricore.

During the course of its performance, RPI did not receive any notice from Tricore regarding the quality of the work performed.  During the course of its performance, RPI did not receive any notice from Tricore regarding the necessity of repairs to the work performed by RPI and RPI did not receive any notice of back charge.  RPI completed its work in accordance with the contract, plans, specifications and industry standard.

## 2.     RPI was Terminated by Tricore for Convenience, Not Default.

Since termination, RPI has consistently contended that Tricore had no basis or cause to default RPI pursuant to the subcontract agreement or the performance bond and that RPI was terminated for convenience and is entitled to full payment for contract balances and contract retainage in the amount of $124,368.  RPI further submits that its termination occurred at a convenient point in the project.  No concrete work was performed between July, 2003 and February, 2004.

The original subcontract price was $863,497 with change orders in the amount of $1,197 for an adjusted contract price of $865,494.  The work completed by RPI prior to termination had a contract value of $773,433 with a balance to complete of $92,061.  Tricore paid RPI $649,065 for its work as reflected in pay applications 1 through 10.  As such, at the time of RPI's termination, Tricore possessed $216,429 in contract funds to complete the work taking into account monies billed by RPI and unpaid ($124,368) and the unbilled balance to complete ($92,061).

At all times, RPI was ready, willing and capable of completing the project.  RPI did not abandon the project and expressed repeatedly a strong desire to complete the project.  RPI confirmed

and clearly communicated its willingness to complete its subcontract work under the direction of Safeco for the amount of the contract balance, $92,061.  As previously noted, all pay applications submitted by RPI prior to its termination were approved and paid.  RPI did not receive any notice from Tricore regarding the quality of the work, the necessity of repair or the imposition of any back charge by Tricore.

RPI did not receive notices of default on four separate occasions as alleged by Tricore.  On March 13, 2003, Tricore sent a letter about the coordination of the delivery of materials to the site and on March 21, 2003, Tricore sent a letter to RPI regarding a union picket line.  In each letter, Tricore generally advised that these problems would have to be addressed "to avoid termination".  Neither of these notices concerned general workmanship and neither of these notices provide a basis for termination.

Even putting aside the lack of notice concerning general workmanship, Tricore retained $77,343 for any required repair work under the subcontract agreement.  RPI submits that sufficient monies were retained by Tricore to address all workmanship issues or "quality issues".  The nature and extent of any repair work was covered by the retainage and within industry standard.  In fact, according to the damages computation prepared and submitted by Tricore at the mediation, Tricore needed to expend only $56,746 to repair alleged deficiencies.  ***(Defendant's Exhibit Q)***.  Clearly, the repair work was insignificant and not a proper basis for termination, especially given the lack of notice by Tricore.

After termination, RPI received a letter dated July 30, 2003 from Attorney Kutchin for Tricore to Ira Sussman at Safeco detailing the alleged basis for RPI's termination.  ***(Defendant's Exhibit W)***.  Attorney Kutchin's letter details sixteen (16) issues which allegedly support RPI's termination.  None of these sixteen (16) issues individually or collectively, represent a default by RPI

7

justifying termination.  These sixteen (16) issues do not relate to the quality of the work or the necessity for repairs to the work.  The sixteen (16) issues refer primarily to the manner in which RPI was managing its work, including management of the project site, RPI labor and subcontractors to RPI.  Tricore also complains about wage reports and lien releases.  RPI submits that most of the sixteen (16) issues are duplicative or inconsequential.  In November of 2003, Kirk Austin, for Safeco, characterized the repair work as not more extensive than "what happens on every job". *(Campbell Aff. ¶24).*

RPI submits that the quality issues identified by Tricore in its memorandum in support of its motion for summary are generally monetarily insignificant and factually inaccurate.  The nine (9) specific items identified in Tricore's memorandum were not the subject of any notice from Tricore or the architect, or the owner prior to termination.  Concrete work is not required to be perfect.  RPI contends that any minor variations or surface imperfections were within industry standard and industry tolerance.  In any event, Tricore retained $77,343 and RPI was obligated to make repairs to bring any non-conforming work into conformance.  RPI was never afforded this opportunity.

## C.    SAFECO'S FAILURE TO PERFORM ITS SURETY OBLIGATIONS

### 1.    Safeco Failed to Complete the Work Utilizing RPI to Mitigate Damages

Under the terms of the performance bond, neither RPI nor Safeco is liable to Tricore unless RPI "shall be in default under the subcontract".  The bond obligation "shall be null and void" if RPI "shall promptly and faithfully perform" the subcontract.  *(Defendant's Exhibit B).*  After declaring RPI in default, Tricore requested that Safeco complete or arrange for the completion of the remaining RPI subcontract work.  Safeco failed and refused to perform its surety obligations and Tricore was permitted or compelled to complete RPI's work itself and repair allegedly defective work.

RPI contends the costs submitted by Tricore to complete and repair are grossly excessive and

have been incurred by Tricore only because Safeco permitted Tricore to self-perform and Safeco failed and refused to complete RPI's work or arrange for the completion of RPI's work. In its mediation summary, Tricore describes in detail the complete and utter failure of Safeco to take any action to complete or arrange for the completion of RPI's subcontract for more than twelve (12) months compelling Tricore to self-perform. Tricore characterized Safeco's "dilatory tactics and general unresponsiveness" as "egregious" and violative of Chapter 93A. *(Defendant's Exhibit F).*

As noted, RPI repeatedly expressed a strong desire to complete the project and was willing to complete the project under the direction of Safeco for the amount of the contract balance, $92,061. Unfortunately, Safeco did not complete the project or arrange for RPI to complete the project. Safeco had no involvement with the completion work and either compelled or permitted Tricore to self-perform the work for a completion cost (without repair) in the amount of $451,023. This figure represents an approximately five-fold increase over RPI's charge to complete.

In November, 2003, Kirk Austin of Safeco informed RPI's counsel that Safeco would complete the project utilizing RPI and RPI would be paid its contract balance pursuant to a completion agreement. In February of 2004, RPI requested a copy of the proposed completion agreement. *(Defendant's Exhibit I).* By letter dated May 24, 2004, Safeco provided a copy of a proposed draft agreement for review and approval. *(Defendant's Exhibit J).* After discussion and negotiation, Safeco forwarded the final version of the completion agreement between RPI and Safeco by correspondence dated June 25, 2004. *(Defendant's Exhibit K).* RPI and all indemnitors signed and returned the agreement the first week of July, 2004. *(Defendant's Exhibit L).*

From November, 2003 to July 12, 2004, RPI understood that Safeco would use RPI to complete and RPI would be paid for its work. Tricore rejected the completion agreement with RPI by letter dated July 12, 2004. *(Defendant's Exhibit N).*

Finally, by letter dated July 27, 2004, Safeco characterized Tricore's actions as follows:

> "It is amazing that Tricore now, nearly 8 months later, objects to Safeco using RPI as its completion contractor since not only does Safeco have the right to select its own contractor under the bond but more importantly, Tricore has always been aware that Safeco desired to utilize RPI to mitigate the costs to complete the project and Tricore never objected to using RPI".  ***(Defendant's Exhibit O).***

At this point in time, most of the completion work and all of the alleged repair work had not been performed.  Tricore rejected a completion agreement with Safeco utilizing RPI, however, Tricore indicates approval of Redmond Construction to complete the project.  Redmond Construction had submitted a bid to complete in the amount of $183,025.  Instead, Safeco did nothing and Tricore self-performed and submits a claim for completion of $451,023.

## 2.    Safeco Provided Tricore Privileged and Confidential Materials Prior to Mediation.

Following notice of termination and prior to litigation, Safeco was represented by Attorney John Sebastian of Chicago, Illinois.  During this time, counsel for RPI communicated regularly with Attorney Sebastian by telephone, regular mail and e-mail.  Safeco also retained a claims consultant, Forcon International-NE, LLC ("Forcon") to inspect the RPI subcontract work and provide an estimate to complete and correct.  Forcon provided information and reports to RPI and Attorney Sebastian for Safeco.

Correspondence from Attorney Sebastian, together with materials and reports prepared by Forcon and provided to RPI by Sebastian were expressly provided by Safeco to RPI under the "Joint Defense Privilege".  The documents were so identified on their face.  After Tricore filed suit in this court, Attorney Brad Carver ("Carver") and Attorney Jonathan Burwood ("Burwood") entered their appearance on behalf of Safeco in defense of RPI's performance bond.

On or about May 25, 2005, Carver and Burwood filed "initial disclosures" with all parties

pursuant to the local rules. These disclosures included privileged and confidential materials which had been marked by Attorney Sebastian as "Joint Defense Privilege" documents. The materials provided by Safeco to Tricore included correspondence from the undersigned dated October 18, 2004 to Attorney Sebastian as counsel for Safeco discussing litigation strategy, settlement value and default/damages issues. ***(Defendant's Exhibit T).*** An e-mail written by Attorney Sebastian dated September 29, 2004 suggests "that a reasonable amount for Tricore's claim would be $156,229". This communication contains a spreadsheet prepared by Attorney Sebastian comparing Tricore's claim with the analysis prepared by Forcon as a consultant to Safeco. ***(Defendant's Exhibit U).*** The Forcon report and analysis is also provided to Tricore in the disclosure.

These disclosures were made approximately eight (8) weeks prior to mediation. Tricore was given the RPI playbook. These materials are clearly confidential and privileged and involve attorney-work-product. These improper disclosures compromise the defense of RPI and may have compelled settlement at mediation.

## III.    CROSSCLAIM OF RPI

On or about November, 2004, Tricore filed a complaint containing seven (7) counts against Safeco and RPI. In Counts I to IV Tricore seeks damages against Safeco on the performance bond issued to RPI and for violations of Chapter 93A and Chapter 176D together with a request for declaratory judgment against Safeco determining and declaring Safeco's responsibility under the performance bond. These claims against Safeco are still pending before this court as of the date of this filing.

In Counts V through VII against RPI, Tricore alleged breach of contract, breach of the covenant of good faith and fair dealing and for alleged violations of Chapter 93A. RPI filed a counterclaim against Tricore for breach of contract, quantum meruit and violations of Chapter 93A.

11

RPI asserted crossclaims against Safeco on the payment bond issued by Safeco for Tricore and for violations of Chapter 93A and Chapter 176D.

Safeco seeks dismissal of Count II of RPI's crossclaim which alleges violations of Chapter 93A and Chapter 176D and states that Safeco failed to conduct a reasonable, independent investigation; failed to effectuate prompt and fair settlement of RPI's claim; compelled RPI to initiate litigation by asserting defenses with no basis in law or fact and asserting generally that Safeco's handling of RPI's claim represents "unfair claims settlement practices" violative of Chapter 176D and unfair and deceptive acts in violation of Chapter 93A.

At this time, it is not clear whether the mediation conducted on July 19, 2005 by Magistrate Judge Swartwood resolved any claims.

Safeco's motion for summary judgment should be denied in all respects. RPI has standing to commence a Chapter 93A action against Safeco based on the factual allegations contained in the original pleading and on the factual allegations contained in the affidavits of David M. Campbell and Bruce R. Iannuccillo which more specifically set forth in detail Safeco's unfair acts in the handling and disposition of these matters. Massachusetts courts have consistently held that conduct by an insurer can give rise to 93A actions by claimants on an insurance agreement. The threshold question of whether the claimant has satisfied the minimum legal and factual requirements for making a claim under Chapter 93A, § 11 requires a court determination. At this point, the allegations of RPI must be accepted by this court in deciding Safeco's motion for summary judgment. RPI's allegations are legally sufficient to state a proper claim under 93A. The ultimate determination concerning whether RPI may recover under 93A is a factual determination requiring trial.

IV.    **ARGUMENT**

    A.    **SUMMARY JUDGMENT STANDARD**

When ruling on summary judgment motions, a court construes the facts "in the light most amiable to the non-movant" and draws all reasonable inferences in the non-movants favor. *Garside v. Osco Drug, Inc.,* 895 F.2d 46 (1st Cir.1990). Summary judgment can only be granted when this view of the case reveals absolutely "no genuine issues as to any material fact". Fed.R.Civ.P.56(c). Any factual issue may be genuine if it could be resolved in favor of either party, and thus would require choosing between "differing versions of truth" at trial. *Garside*, 895 F.2d at 48 (1990). Material facts are those potentially capable of effecting the outcome at trial. *Cadle Company v. Hayes*, 116 F.3rd 957 (1st Cir.1997).

    B.    **RPI HAS ALLEGED SUFFICIENT FACTS TO ESTABLISH A CLAIM UNDER CHAPTER 93A**

    C.    **MATERIAL ISSUES OF FACT EXIST REGARDING SAFECO'S LIABILITY**

Chapter 93A permits a subcontractor to assert a claim for unfair methods of competition or unfair or deceptive acts or practices where a surety forces a plaintiff to litigate clearly valid payment bond claims. M.G.L. Ch. 93A §11. *R.W. Granger v. J & S Insulation,* 435 Mass. 66 (2001)(where surety failed to make payment after a jury verdict, then after four months made a settlement offer of roughly one-third the amount of the verdict, the court found the totality of the surety's conduct was remediable under 93A). A violation of M.G.L. Ch. 176D §3(9) alone does not support a §11 claim under Chapter 93A. *Divenuti v. Reardon*, 37 Mass.App.Ct. 73 (1994). However, a Chapter 176D violation that "rises to a level so as to constitute an unfair or deceptive act for purposes of Chapter 93A supports an independent claim for violation of Chapter 93A §11. *St. Paul Village Condominium Association v. St. Paul Fire*, 1996 WL 384249 (Mass.Super.)(insurer's motion for summary judgment on 93A claim denied where insurer failed to pay a sum it conceded was due).

"Failure to make a reasonable offer of settlement where liability is reasonably clear can support an action under M.G.L. Ch. 93A even if M.G.L. Ch. 176D is not directly applicable". _Smyrna Rebar Company, Inc. v. United States Fidelity and Guaranty Company, Inc._, 65 Mass.App.Ct. 1103 (2005).

While the "boundaries of what may qualify for consideration as a Chapter 93A violation is a questions of law" whether "a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact". _Commercial Union Insurance Company v. Seven Provinces Insurance Company_, 217 F.3d 33 (1st Cir. 2000). The Massachusetts Supreme Judicial Court has found phrases such as "level of rascality" and "rancid flavor of unfairness" to be "uninstructive" in deciding questions of unfairness. Id. "A 93A fairness determination focuses on the nature, purpose and effect of the challenged conduct." Id. (finding insurer's conduct of constantly shifting defenses and never coming to decisions in order to force a settlement regardless of merits was unfair in nature).

Practices may be unfair if they are "within the penumbra of some common-law, statutory, or other established concept of unfairness; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury to other businessmen". _Arthur D. Little v. Dooyang Corp._, 147 F.3d 47 (1st Cir. 1998). Conduct such as withholding payment, "stringing plaintiffs along", and "coercing plaintiff[s] to settle for substantially less" than previously agreed can form the basis for 93A claims. Id. An insurer's conduct during litigation can give rise to a 93A claim. _Commercial Union_, 217 F.3d 33 (1st Cir. 2000).

RPI has alleged sufficient facts in its crossclaim and affidavits to establish a claim for unfair and deceptive trade practice in violation of Chapter 93A, §2 and 11. Safeco cannot avoid the possibility of Chapter 93A liability by merely filing an affidavit containing conclusory assertions that Safeco did not find the validity of RPI's claim to be reasonably clear. A finder of fact examining the facts at trial could find that with a proper investigation of RPI's claim, liability was reasonably

14

clear. Moreover, failure to pay RPI's reasonably clear payment bond claim is not the only unfair conduct asserted by RPI against Safeco.

The RPI affidavits reveal the following issues of material fact relevant to determining whether Safeco's conduct resulted in a violation of Chapter 93A: (1) Safeco's failure to complete the project utilizing RPI for $92,061; (2) Safeco's failure to complete the project utilizing Redmond Construction for $183,025; (3) Safeco's failure to be involved in any respect with the completion of the project; (4) Safeco's failure to defend in any respect the improper default; (5) Safeco permitting or compelling Tricore to self-perform all completion and repair; (6) Safeco's repeated misrepresentations to RPI that RPI would complete the project and be paid its contract balance; (7) Safeco's excessive and unconscionable proposed settlement agreement with Tricore; (8) Safeco's acceptance of approximately $450,000 for completion costs; and (9) Safeco counsel's improper disclosure of confidential and privileged material discussing settlement strategy and settlement value shortly before mediation.

This court must also take into account Safeco's dual role in this matter and their inherent conflict of interest in treating both parties fairly. The claims of RPI and Tricore are against one company and one company investigated these claims and one company chose to settle these claims in an unbalanced way. Safeco performed its performance surety obligations miserably and created potential bad-faith liability to Tricore and now seeks to stick RPI with the bill. Safeco would like to avoid any scrutiny of their actions and decisions in this matter. At this point, without discovery, RPI has no information as to how this train wreck occurred.

All of these allegations are material facts in determining unfair and deceptive acts pursuant to Chapter 93A and Safeco should not be permitted to avoid an accounting at trial, or at least through discovery. The conduct alleged by RPI in this matter is clearly sufficient to support a claim of unfair

actions by Safeco violative of Chapter 93A.  As such, genuine issues of material fact still exist.

## V.     CONCLUSION

RPI has standing to make a claim against Safeco pursuant to Chapter 93A.  RPI has alleged

sufficient facts which, if proven, would establish liability against Safeco pursuant to Chapter 93A.

Material issues of facts exist with regard to Safeco's liability to RPI pursuant to Chapter 93A.

Safeco's abject failure to complete or arrange for the completion of the project created potential

liability to Tricore for bad faith.  To resolve bad faith liability that Safeco itself had created, Safeco

has proposed to pay an excessive settlement to Tricore utilizing RPI contract balances and dismissal

of all RPI claims.  Safeco is not entitled to summary judgment dismissal of Count II of RPI's

crossclaim alleging violations of Chapter 93A.

Defendant/Crossclaim Plaintiff
*R.P. Iannuccillo & Sons Construction Co.*
By its Attorneys:


/s/ David M. Campbell
David M. Campbell, Esq. (BBO #645512)
*Visconti & Boren, Ltd.*
55 Dorrance Street
Providence, RI 02903
*Telephone:* 401/331-3800
*Facsimile:* 401/421-9302

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that a copy of the foregoing has been furnished by U.S. Mail, postage prepaid, this 14th day of December, 2005, to:

Edward D. Kutchin, Esquire
Kerry R. Northup, Esquire
Kutchin & Rufo, P.C.
155 Federal Street
Boston, MA 02110

Bradford R. Carver, Esquire
Jonathan C. Burwood, Esquire
Hinshaw & Culbertson LLP
One International Place
Fort Hill Square, 3rd Floor
Boston, MA 02110

Dennis C. Cavanaugh, Esquire
Brown, Raysman, Millstein, Felder & Steiner
Cityplace II, 10th Floor
185 Asylum Street
Hartford, CT 06103

/s/ David M. Campbell

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CIVIL ACTION NO. 04-12393(JGD)

| | |
|---|---|
| TRICORE, INC. | : |
| | : |
| VS. | : |
| | : |
| SAFECO INSURANCE COMPANY OF | : |
| AMERICA and R.P. IANNUCCILLO | : |
| & SONS CONSTRUCTION CO. | : |

STATEMENT OF DISPUTED MATERIAL FACTS
IN OPPOSITION TO SAFECO INSURANCE COMPANY
OF AMERICA'S MOTION FOR SUMMARY JUDGMENT

Defendant and Crossclaim Plaintiff, R.P. Iannuccillo & Sons Construction Co. ("RPI")

submits its statement of disputed material facts in opposition to Safeco Insurance Company of

America's ("Safeco") motion for summary judgment.

1.      RPI completed its work in accordance with the contract, plans, specifications and

industry standard.  During the course of its performance, RPI did not receive any notice from Tricore

regarding the quality of the work performed.  RPI submitted ten (10) applications for payment prior

to termination and all said applications were paid in accordance with their terms.  ***Iannuccillo Aff.***

***¶ 31.***

2.      During the course of its performance, RPI did not receive any notice from Tricore

regarding the necessity of repairs to the work performed by RPI on the project.  ***Iannuccillo Aff.***

***¶ 32.***

3.      During the course of its performance, RPI did not receive any notice of back charge

from Tricore regarding the work performed by RPI on the project.  ***Iannuccillo Aff. ¶ 33.***

4.      After termination, RPI received a letter dated July 30, 2003 from Attorney Kutchin

for Tricore to Ira Sussman at Safeco detailing the alleged basis for RPI's termination.  This letter

details sixteen (16) issues which allegedly support RPI's termination.  None of the sixteen (16)

issues, individually or collectively, represent a default by RPI justifying termination. These sixteen (16) items do not relate to the quality of the work or the necessity for repairs to the work. ***Iannuccillo Aff. ¶ 34, 35.***

5.    The sixteen (16) issues refer primarily to the manner in which RPI was managing its work, including management of the project site, RPI labor and subcontractors to RPI. Tricore also complained about wage reports and lien releases. Most of the sixteen (16) issues are either duplicative or inconsequential. ***Iannuccillo Aff. ¶ 36.***

6.    By correspondence dated September 12, 2003, RPI responded to Attorney Kutchin's July 30, 2003 letter by sending an eleven page rebuttal to Ira Sussman at Safeco. RPI addressed each Tricore allegation and disputed the allegations factually and disputed that the allegations, even if true, provided a sufficient basis for termination. ***Iannuccillo Aff. ¶ 37 and Defendant's Ex. X.***

7.    RPI submits that Tricore breached the subcontract agreement, by failing to: (1) produce progress schedules and deliver updates; (2) interpret specifications for conformance with the work installed; (3) coordinate between the project architect and subcontractors for timely approval of work completed; (4) provide layout and survey for building lines; (5) conduct regular project meetings; (6) administer its safety program and maintain a safe workplace; (7) delivering written notices of non-conforming work; (8) maintaining separate entrance gates for union and open shop trade contractors; (9) scheduling and sequencing the work; and (10) permitting subcontractors to complete their work without interference. ***Iannuccillo Aff. ¶ 38.***

8.    RPI submits that its termination was for convenience and not default and RPI further submits that its termination occurred at a convenient point in the project. No concrete work was performed between July, 2003 and February, 2004. ***Iannuccillo Aff. ¶ 27.***

9.    At all times, RPI was ready, willing and capable of completing the project. RPI did

not abandon the project and expressed repeatedly a strong desire to complete the project. RPI confirmed and clearly communicated its willingness to complete its subcontract work under the direction of Safeco for the amount of the contract balance, $92,061. *Iannuccillo Aff. ¶ 26.*

10.      RPI is owed $124,368 for contract work and contract retainage for labor and materials provided on the project prior to termination. More specifically, RPI is owed $47,025 as reflected by pay application #11 and $77,343 for contract retainage for pay application 1 to 10. *Iannuccillo Aff. ¶ 20 and Defendant's Ex. E.*

11.      RPI contends that the costs submitted by Tricore to complete and repair are grossly excessive and have been incurred by Tricore only because Safeco permitted Tricore to self-perform and Safeco failed and refused to complete RPI's work or arrange for the completion of RPI's work. *Iannuccillo Aff. ¶ 24.*

12.      RPI did not receive notices of default on four (4) separate occasions as alleged by Tricore. On March 13, 2003, Tricore sent a letter about the coordination of the delivery of materials to the site and on March 21, 2003, Tricore sent a letter to RPI regarding a union picket line. In each letter, Tricore generally advised that these problems would have to be addressed "to avoid termination". *Iannuccillo Aff. ¶ 39.*

13.      RPI has no knowledge or information concerning whether the owner, or any others, were dissatisfied in any respect with the quality of RPI's work.

14.      RPI has no information or knowledge concerning the investigation conducted by Safeco or the industry standard protocol used in investigating the claim.

15.      RPI has consistently contended and believes it can prove that Tricore had no basis or cause to default RPI pursuant to the subcontract agreement and performance bond and that RPI was terminated for convenience and is entitled to full payment for contract balances and contract

retainage in the amount of $124,368. *Iannuccillo Aff. ¶ 23.*

16.     From termination in July, 2003 through July 12, 2004, RPI understood that Safeco would complete utilizing RPI and RPI would be paid its contract balance. *Iannuccillo Aff. ¶ 30.*

17.     Under the terms of the performance bond, Tricore requested that Safeco complete or arrange for the completion of the remaining RPI subcontract work.  Safeco failed and refused to perform its surety obligations and Tricore was compelled to complete RPI's work itself and repair allegedly defective work. *Campbell Aff. ¶ 14.*

18.     In its mediation summary, Tricore describes in detail the complete and utter failure of Safeco to take any action to complete or arrange for the completion of RPI's subcontract work for more than twelve (12) months compelling Tricore to self-perform.  Tricore characterized Safeco's "dilatory tactics and general unresponsiveness" as "egregious" under the circumstances and violative of Chapter 93A. *Campbell Aff. ¶ 17 and Defendant's Ex. F.*

19.     From July of 2003 to November of 2004, Safeco accomplished nothing with regard to the completion of the project and resolution of Tricore's claim on RPI's performance bond. *Campbell Aff. ¶ 18.*

20.     Prior to mediation, counsel for Safeco disclosed confidential, privileged and attorney-work-product materials to counsel for Tricore including correspondence prepared by counsel for RPI discussing settlement strategy and settlement value. *Campbell Aff. ¶¶ 43, 44.*

> Defendant/Crossclaim Plaintiff
> **R.P. Iannuccillo & Sons Construction Co.**
> By its Attorneys:
>
> /s/ David M. Campbell
> David M. Campbell, Esq. (BBO #645512)
> **Visconti & Boren, Ltd.**
> 55 Dorrance Street
> Providence, RI 02903

*Telephone:* 401/331-3800
*Facsimile:* 401/421-9302

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that a copy of the foregoing has been furnished by U.S. Mail, postage prepaid, this 14th day of December, 2005, to:

Edward D. Kutchin, Esquire
Kerry R. Northup, Esquire
Kutchin & Rufo, P.C.
155 Federal Street
Boston, MA 02110

Bradford R. Carver, Esquire
Jonathan C. Burwood, Esquire
Hinshaw & Culbertson LLP
One International Place
Fort Hill Square, 3rd Floor
Boston, MA 02110

Dennis C. Cavanaugh, Esquire
Brown, Raysman, Millstein, Felder & Steiner
Cityplace II, 10th Floor
185 Asylum Street
Hartford, CT 06103

/s/ David M. Campbell