UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRICORE, INC.,<br>    Plaintiff,<br><br>v.<br><br>SAFECO INSURANCE COMPANY OF AMERICA, and R.P. IANNUCCILLO & SONS CONSTRUCTION CO.,<br>    Defendants. | CIVIL ACTION NO. 04-12393-JGD |

## SAFECO INSURANCE COMPANY OF AMERICA'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AGREEMENT

Defendant Safeco Insurance Company of America ("Safeco") hereby submits this Memorandum of Law in support of its motion to enforce the settlement agreement reached with Plaintiff Tricore, Inc. ("Tricore") on July 19, 2005.

### PROCEDURAL BACKGROUND

This action was initiated by Tricore against Defendants Safeco and R.P. Iannuccillo & Sons Construction Company ("RPI"). Tricore served as the general contractor in connection with a construction project known as "Sherrill House – Frank Wood Expansion" (hereafter referred to as the "Project"). On or about April 25, 2002, Tricore retained RPI to serve as the Project's principal concrete subcontractor. Safeco, as surety, issued payment and performance bonds on behalf of RPI, as principal, in connection with the Project. Safeco also issued payment and performance bonds on behalf of Tricore in connection with the Project.

On or about July 3, 2003, Tricore terminated RPI from the Project. Thereafter, Tricore made a demand for relief under the performance bond issued by Safeco on behalf of RPI. Consistent with its obligations under the performance bond, Safeco made every effort to work with Tricore towards the end of curing RPI's default. Nonetheless, Tricore ultimately completed

1

RPI's work at its own expense. Thereafter, Tricore brought suit against Safeco and RPI to recover, among other things, the cost of completing RPI's work.

Tricore asserted claims against Safeco for breach of contract, breach of the covenant of good faith and fair dealing, alleged violations of M.G.L. c. 93A and 176D, and declaratory relief. Tricore further asserted claims against RPI for breach of contract, breach of the covenant of good faith and fair dealing, and M.G.L. c. 93A. For its part, RPI asserted a counterclaim against Tricore for breach of contract, quantum meruit and, M.G.L. 93A. Moreover, RPI asserted a cross-claim against Safeco (in its capacity as Tricore's surety) alleging Safeco's breach of the payment bond issued on behalf of Tricore, as well as a claims under M.G.L. 93A and 176D. As noted above, the payment bond issued by Safeco on behalf of Tricore is completely distinct from the bonds Safeco issued on behalf of RPI. Nonetheless, as this litigation involves claims on two distinct bonds, Safeco is a dual-defendant in this case. As this motion will address both bonds, Safeco will hereinafter be referred to as "Safeco(RPI)" in its capacity as RPI's performance bond surety, and "Safeco(Tricore)" in its capacity as Tricore's payment bond surety.

## THE SETTLEMENT

On July 19, 2005, Tricore, RPI, Safeco(RPI), and Safeco(Tricore) participated in a mediation through the Court's Alternative Dispute Resolution Program with the Hon. Charles B. Swartwood, III. See accompanying Affidavit of Jonathan C. Burwood at ¶ 2 (hereinafter "Burwood Affidavit"). Heading into the mediation, Tricore sought recovery from Safeco(RPI) and RPI in excess of $500,000.00. Burwood Affidavit at ¶3. Following a full day of mediation, Safeco(RPI) ultimately agreed to settle Tricore's claims for payment of $300,000.00. Burwood Affidavit at ¶4. In return, Tricore agreed to dismiss with prejudice its claims against Safeco(RPI) and RPI. Burwood Affidavit at ¶4.

2

Despite the best efforts of the parties and the mediator, RPI was not willing to participate in the settlement reached on July 19, 2005. Burwood Affidavit at ¶5. In the interest of resolving Tricore's claims, Safeco(RPI) agreed to utilize its broad powers under the indemnity agreement executed by RPI to dismiss RPI's counterclaim against Tricore, as well as RPI's cross-claim against RPI(Tricore) under the payment bond.[1] Burwood Affidavit at ¶5. Safeco(RPI), however, was not in a position to dismiss RPI's claim against Safeco(Tricore) under M.G.L. 93A and 176D. Burwood Affidavit at ¶5.

All of the parties, including Tricore, were aware at the mediation that RPI's bad faith claim against Safeco(Tricore) would remain intact despite the settlement. Burwood Affidavit at ¶6. Moreover, counsel for Tricore, Safeco(RPI), and Safeco(Tricore) expressly discussed the ramifications of continuing to defend RPI's bad faith claim; namely that Tricore and its co-indemnitors will ultimately be responsible for any monies expended by Safeco(Tricore) as a result of RPI's claim, including all associated costs and attorneys' fees. Burwood Affidavit at ¶6. During the course of that discussion, counsel for Safeco(RPI), Safeco(Tricore) and Tricore agreed that RPI's bad faith claims were without merit, and could be easily disposed, either voluntarily by RPI, or through a dispositive motion. Burwood Affidavit at ¶6. Consistent with that understanding, Tricore expressly and unequivocally agreed to accept $300,000.00 in exchange for a dismissal and release of its claims against Safeco(RPI). Burwood Affidavit at ¶7. On this basis, the parties met with Judge Swartwood late in the afternoon on July 19, 2005 and reported the settlement of Tricore's claims. Burwood Affidavit at ¶7.

---

[1] The power of attorney provisions of the RPI indemnity agreement grant Safeco(RPI) the authority to settle claims asserted by or against RPI in the interest of resolving bonded obligations.

3

Consistent with the parties' agreement, Judge Swartwood filed a <u>Report of Alternative Dispute Resolution Provider</u> with the Court on or about July 21, 2005. <u>Burwood Affidavit</u> at ¶8. The report indicates that "[t]he major claim in this case has been settled, but there remains a counterclaim [sic] that R.P. Iannuccillo & Sons has asserted against Safeco Insurance Company of America which has yet to be resolved." <u>Burwood Affidavit</u> at ¶8. Judge Swartwood's report accurately reflects that Tricore's claims were settled through mediation on July 19, 2005. <u>Burwood Affidavit</u> at ¶8.

## **THE SETTLEMENT AGREEMENT**

On August 4, 2005, counsel for Tricore forwarded a draft Settlement Agreement to counsel for Safeco(RPI) and Safeco(Tricore). Counsel's correspondence accompanying the Settlement Agreement read:

> I am attaching a copy of the proposed Settlement Agreement relative to the lawsuit between Tricore, RPI and Safeco. Please review the document and then contact me with any questions or comments you have. I left voice messages for the three of you to inform you that Tricore is not interested in accepting the proposed tendering of the defense of [Safeco(Tricore)] in the cross claim action brought by RPI. Rather, we believe it is far better for [counsel for Safeco(Tricore)] to continue to represent [Safeco(Tricore)] and then when [counsel for Safeco(Tricore)] finally gets rid of the action [Safeco(Tricore)] has its rights under the General Indemnity Agreement. I hope we can resolve this part of the case very shortly. I will look forward to hearing from you shortly.

<u>Burwood Affidavit</u> at ¶9.

A review of the accompanying Settlement Agreement, prepared solely by counsel for Tricore, unequivocally indicates that Tricore settled its claims on July 19, 2005. <u>Burwood Affidavit</u> at ¶10. In fact, the recitals section of the Settlement Agreement expressly provides "[w]hereas, Tricore and Safeco have mutually and voluntarily chosen to resolve their claims and defenses without further litigation pursuant to this Agreement." <u>Burwood Affidavit</u> at ¶10.

The balance of the Agreement contains standard settlement provisions, including limited releases by both Tricore and Safeco. <u>Burwood Affidavit</u> at 11. It is again significant to note that Tricore prepared the Settlement Agreement, and Tricore elected to include "limited" as opposed to "full" or "general" releases. <u>Burwood Affidavit</u> at ¶11. The limited nature of the releases between Tricore and Safeco is reflective of the fact that, as referenced above, Tricore and its surety Safeco(Tricore) have unfinished business with respect to any loss or costs incurred by Safeco(Tricore) as a result of RPI's surviving bad faith claim. <u>Burwood Affidavit</u> at ¶11. As Tricore is obligated to reimburse Safeco(Tricore) for any losses pursuant to its indemnity obligations, Tricore expressly "carved-out" this exposure from the Settlement Agreement. <u>Burwood Affidavit</u> at ¶5. Specifically, the limited releases prepared by Tricore contain the following reservation:

> Notwithstanding the foregoing or any other provision herein contained, under no circumstances shall this provision be deemed a release [by either party] of any rights or obligations under the terms of either Payment Bond No. 600617 issued by Safeco to Tricore on the Project or the General Agreement of Indemnity for Contractors entered into by and between Safeco and Tricore on January 28, 2002.

<u>Burwood Affidavit</u> at ¶12.

Consistent with the parties understanding at the close of mediation, the Settlement Agreement prepared by Tricore expressly reserves the parties' rights with respect to Tricore's indemnity obligation to Safeco(Tricore). <u>Burwood Affidavit</u> at ¶13. As noted above, this "carve-out" is emphasized by counsel's correspondence accompanying the Settlement Agreement, which expressly declines Safeco(Tricore)'s offer to tender the defense of RPI's bad faith claim to Tricore, and further acknowledges that Safeco(Tricore) will retain its indemnity recourse against Tricore, despite the settlement and release of all other claims between Tricore and Safeco(RPI) as set forth in the Settlement Agreement. <u>Burwood Affidavit</u> at ¶13.

On August 12, 2005, undersigned counsel for Safeco(RPI) participated in a telephone conference with counsel for Tricore regarding the Settlement Agreement. Burwood Affidavit at ¶14. During that telephone conference, counsel discussed the "carve-out" discussed above, and counsel for Tricore again acknowledged that Tricore's existing indemnity obligation would remain intact, and that there was no reason for that indemnity obligation to stand in the way of the settlement reached between Tricore and Safeco(RPI) on July 19, 2005. Burwood Affidavit at ¶14.

On August 19, 2005, counsel for Tricore directed correspondence to counsel for Safeco(RPI) and Safeco(Tricore) inquiring as to any questions or comments regarding the Settlement Agreement, and expressing Tricore's interest in "finalizing our settlement." Burwood Affidavit at ¶15.

On September 13, 2005, undersigned counsel forwarded to Tricore's counsel Safeco(RPI)'s proposed edits to the Settlement Agreement. Safeco(RPI)'s edits were minimal. Notably, Safeco(RPI) did not have any objection to the indemnity "carve-out" proposed by Tricore.[2] Burwood Affidavit at ¶16.

On September 14, 2005, the parties appeared before the Court for a Status Conference to discuss RPI's surviving cross-claim against Safeco(Tricore). Burwood Affidavit at ¶17. During the Status Conference, the parties recapped the settlement of July 19, 2005 for the Court, and spent a considerable amount of time discussing how best to proceed with RPI's surviving bad faith claim. Burwood Affidavit at ¶17. Although the parties acknowledged that a resolution of RPI's surviving claim would result in a more comprehensive settlement, and such a resolution

---

[2] Safeco(Tricore) has since reviewed the Settlement Agreement and finds the indemnity reservation proposed by Tricore acceptable as well.

6

would understandably impact the scope of the Settlement Agreement, at no time during the Status Conference did Tricore report that the Settlement reached on July19, 2005 was in dispute. Burwood Affidavit at ¶17.  At the end of the Status Conference, the Court directed RPI to make a decision regarding its intention to prosecute the bad faith claim against Safeco(Tricore) on or before October 7, 2005.  Burwood Affidavit at ¶17.  In the event RPI chose to pursue the claim, the Court directed Safeco(Tricore) to file its dispositive motion by November 1, 2005.  Burwood Affidavit at ¶17.  As RPI ultimately refused to dismiss its claim, Safeco(Tricore) filed a Motion for Summary Judgment on November 4, 2005, which is presently pending.  Burwood Affidavit at ¶17.

On or about November 16, 2005, counsel for Tricore sought the assent of opposing counsel to extend the December 15, 2005 discovery cut-off.  Burwood Affidavit at ¶18.  As Tricore's claims have been settled, both Safeco(RPI) and Safeco(Tricore) did not see any reason to extend the discovery cut-off.  Burwood Affidavit at ¶18.  In communicating this position to counsel for Tricore, undersigned counsel indicated in correspondence that "the Tricore performance bond claim against Safeco (as RPI's surety) is settled."  Burwood Affidavit at ¶18. Tricore's counsel did not make any effort to refute that assertion until undersigned counsel insisted on December 1, 2005 that the parties resolve any minor edits and execute the Settlement Agreement.  Burwood Affidavit at ¶18.

In response, and for the first time, Tricore expressed its refusal to execute the Settlement Agreement unless Safeco(Tricore) agreed to waive its indemnity rights against Tricore. Burwood Affidavit at ¶19.  Tricore now maintains that waiver of the indemnity obligation was a condition of the settlement reached on July 19, 2005.  Burwood Affidavit at ¶19.  As set forth above, Tricore's position in this regard is completely inconsistent with the record, particularly

the Settlement Agreement prepared by Tricore which provides for an express reservation of the indemnity obligation. An analysis of the discrepancies in Tricore's position is set forth in Section II(A) herein.

## LAW & ARGUMENT

### I. The Court Has the Inherent Power to Enforce the Settlement Agreement.

Courts have long recognized the prudential policy favoring settlement as a preferred alternative to costly, time-consuming litigation. See Mathewson v. Allied Marine Industries, Inc., 827 F.2d 850, 852 (1st Cir. 1987). As such, a negotiated settlement is a most solemn undertaking in the eyes of the courts. Id. On this basis, the courts retain an inherent power to supervise and enforce settlement agreements entered into by parties. Id. Whereas garden-variety contract negotiations implicate the interest of the contracting parties, settlement negotiations which take place in the context of ongoing litigation implicate the courts as well. Id. There is an institutional interest in the solemnity of such agreements, in bringing certainty to the process, and in minimizing the opportunities for lawyers and litigants alike to act as Monday morning quarterbacks. Id.

The policy of favoring settlement agreements as a means of avoiding costly and time consuming litigation would scarcely by furthered by leaving a party without recourse when the other party fails to perform according to the terms of the agreement. See Dankese v. Defense Logistics Agency, 693 F.2d 13, 16 (1st Cir. 1982) citing Warner v. Rossignol, 513 F.2d 678 (1st Cir. 1975). It is well established, therefore, that a trial court retains an inherent power to supervise and enforce settlement agreements entered into by parties to an action pending before the court. Dankese, 693 F.2d at 16.

Further, settlement agreements are commonly enforced by specific performance. See Correia v. Desimone, 34 Mass.App.Ct. 601 (1993) (affirming award of specific performance where party attempted to renege on settlement agreement reached the day before). Specific performance is typically an appropriate remedy when a party to a settlement agreement attempts to renege. Malave v. Carney Hospital, 170 F.3d 217, (C.A.1 Mass. 1999) Summary enforcement of arm's length settlements is considered a useful device to hold parties to their word. Malave, 170 F.3d at 222.

As set forth above, Tricore and Safeco(RPI), both sophisticated business entities with the benefit of counsel, entered into an arms-length agreement to settle Tricore's claims on July 19, 2005. The settlement was the product of hours of direct negotiation between the parties and their counsel, following which the parties shook hands and reported the settlement to Judge Swartwood, and thereafter the Court. It was not until months later that Tricore began to have a change of heart, and completely reversed its well-documented position regarding its indemnity obligation to Safeco(Tricore). Tricore's conduct in this regard is the height of "Monday morning quarterbacking" that the First Circuit condemned in Mathewson, supra. On this basis, and in the interest of the solemnity of settlement agreements, Safeco(RPI) respectfully requests that the Court invoke its inherent authority to enforce the settlement reached at the mediation.

II.     **The Settlement Agreement is Binding and Enforceable Against Tricore.**

It is conventional for courts to enforce settlement agreements, assuming the agreement is valid and not against public policy. See Quint v. A.E. Staley Mfg. Co., 246 F.3d 11 (1st Cir. 2001), cert. denied, 535 U.S. 1023 (2002). Such agreements are binding and enforceable even when they require further documentation or negotiation or are contingent on future events, so long as they provide mechanisms to narrow present uncertainties to rights and obligations. See

9

LaFayette Place Assoc. v. Boston Redevelopment Auth., 427 Mass. 509, 518 n. 9 (1998). These agreements are commonly viewed as voluntary surrenders of the right to have one's day in court. See Bandera v. City of Quincy, 344 F.3d 47 (1st Cir. 2003).

Where parties have merely reached a stage of "imperfect negotiation" prior to formalizing a contract, and have yet to reduce their agreement to terms, there is no obligation imposed on the parties. Lafayette at 517; See also Rosenfield v. United States Trust Co., 290 Mass. 210 (1935) (stating that "to be bound, the parties must have progressed beyond the stage of imperfect negotiation.") However, when parties have progressed beyond the stage of imperfect negotiation, a contract should be interpreted so as to make it an enforceable undertaking rather than one of no force and effect. Lafayette, 427 Mass. at 517.

### A.   The Parties Agreed to Settle Tricore's Claims.

Tricore unequivocally agreed to settle its claims against RPI and RPI(Safeco) in return for payment of $300,000.00. The settlement was reported to Judge Swartwood and the Court. Thereafter, Tricore's own counsel drafted and circulated an eight page, single spaced, Settlement Agreement specifying in detail the terms of settlement. One such term, expressly identified at the mediation, and thereafter included in the Settlement Agreement by Tricore, is the reservation of rights between Tricore and Safeco(Tricore) concerning indemnity.

Tricore now inexplicably maintains that Safeco(Tricore)'s waiver of the indemnity obligation was a contingency underlying the original settlement reached at the mediation. In support of this position, Tricore's counsel directed correspondence to counsel for Safeco on or about December 5, 2005 containing the following assertions:

> "It is important to remember the specific reason why [Tricore] has consistently stated that the settlement of the lawsuit was contingent upon a complete dismissal of all claims and counterclaims in the lawsuit by all parties and an exchange of general releases by all parties relating to the lawsuit."

"As I have continuously told you and [counsel for Safeco(Tricore)] on numerous occasions and also explained to Judge Dein on September 14, when the settlement was reached between Safeco and Tricore at the end of the mediation … it was agreed by Safeco … that Tricore would receive payment of $300,000, a total release from both Safeco and RPI relative to the subject project and its obligations to [Safeco(Tricore)] under its general indemnity agreement and that the entire lawsuit would be dismissed."

"However, counsel for all parties realized after the settlement was agreed upon that Safeco did not have the authority to dismiss RPI's [bad faith claim] against Safeco and therefore the entire lawsuit could not be dismissed and the basic premise for which the settlement had been agreed upon could not be effectuated."

<u>Burwood Affidavit</u> at ¶20.

Although the record speaks for itself, Safeco(RPI) is compelled to identify the most glaring inconsistencies with respect to Tricore's efforts at revisionist history:

·Tricore has not *consistently stated* that an indemnity waiver was a term of the settlement. Counsel's December 5, 2005 correspondence was the first and only time Tricore took this position.

·Tricore was well aware that the settlement would not result in a *dismissal of all claims*. Tricore acknowledged that RPI's bad faith claim would survive as evidenced by the fact that Tricore never disputed Judge Swartwood's ADR Report of July 21, 2005. Moreover, counsel's correspondence dated August 4, 2005 (enclosing the Settlement Agreement) discussed strategy for defending the surviving bad faith claim.

·Tricore never expected to receive a *general release* or *total release* as (and this point cannot be stressed enough) <u>Tricore drafted the Settlement Agreement</u> and expressly included "limited" releases preserving Tricore's indemnity obligation to Safeco(Tricore). Tricore never had any expectation that Safeco(Tricore) would release its indemnity rights. If this were the case, why would Tricore have included the indemnity "reservation" in the Settlement Agreement?

·The dismissal of RPI's bad faith claim against Safeco(Tricore) was never a *basic premise* for the settlement reached on July 19, 2005. Safeco and Tricore discussed the survival of this claim, and collectively agreed that the claim was without merit and subject to dismissal, either voluntarily or through a dispositive motion. Tricore's understanding in this regard is evidenced by counsel's correspondence dated August 4, 2005 discussing strategy for resolving RPI's surviving claim, and (again) the Settlement Agreement's reservation of the corresponding indemnity obligation.

<u>Burwood Affidavit</u> at ¶21.

11

It is crystal clear from the record that Tricore agreed to accept $300,000.00 in full and final settlement of its claims on July 19, 2005. It is further evident that Tricore was aware that RPI's bad faith claim against Safeco(Tricore) had not been settled, could not be dismissed, and would survive despite the settlement. Tricore was further cognizant of the potential impact the survival of that claim could have with respect to its indemnity obligations to Safeco(Tricore). Nonetheless, Tricore was eager to accept payment from Safeco(RPI) in settlement as evidenced by the relevant correspondence, telephone calls, and (most significantly) the Settlement Agreement drafted by Tricore. Only later, perhaps around the time of the Status Conference of September 14, 2005, did Tricore experience a change of heart with respect to its indemnity obligation. Fortunately for Safeco and the Court, by the time Tricore reversed course, the record was sufficiently developed to demonstrate the terms upon which Tricore settled on July 19, 2005. On the basis of that record, Safeco respectfully requests that the Court enforce the settlement.

B.   The Settlement was not Contingent on Execution of a Written Agreement.

A binding settlement agreement can be reached without the need for a writing. See Hubbard v. C.A. Peairs, 24 Mass. App. Ct. 372, 377 (1987). In this regard, verbal settlement agreements are routinely held effective despite the fact that a party thereafter reneges and refuses to execute a written instrument. See Dominick v. Dominick, 18 Mass. App. Ct. 85 (1984); Carver v. Waldman, 21 Mass. App. Ct. 958 (1986). Moreover, settlements to be performed within one (1) year are not subject to the Statute of Frauds (G.L. c. 259, § 1). Id. Only an unconditional "yes," and not a party's signature on settlement papers, is required to make a settlement offer binding. See Thomas v. Massachusetts Bay Transportation Authority, 39 Mass. App. Ct. 537 (1995).

Consistent with the foregoing, the fact that the parties did not immediately execute a written agreement confirming the settlement does not erode the binding nature of that settlement in any manner. See Wang Laboratories, Inc. v. Applied Computed Sciences, Inc. 741 F.Supp. 992 (D.Mass. 1990)(fact that settlement agreement was not reduced to writing does not bar enforcement when parties reported to court that claim was settled). It's sufficient for purposes of enforcing the Settlement Agreement that the parties reached a "meeting of the minds." See Malek v. Verizon Communications, Inc. 2004 WL 189251 (D. Mass.)(formation of a settlement agreement, like any other contract, requires a bargain in which there is a manifestation of mutual assent, *i.e.* a meeting of the minds to the exchange and consideration).

As set forth above, the parties reached a "meeting of the minds" on July 19, 2005. The parties' mutual assent to the settlement was sufficient to report the matter settled to Judge Swartwood, and thereafter the Court. Moreover, the parties' agreement was later expressed in writing by Tricore in the form of a Settlement Agreement. Though non-substantive edits, and the as-yet-unresolved fate of RPI's surviving bad faith claim, delayed the parties from actually executing the Settlement Agreement, Tricore is not entitled to seek shelter behind its own unwillingness to execute the Agreement as justification for withdrawing from a settlement reached and memorialized approximately five (5) months ago. The terms of the settlement are sufficiently clear for enforcement, even absent an executed Settlement Agreement.

    C.    The Parties Reported the Settlement to the Court.

The primary concern of the doctrine of judicial estoppel is to protect the integrity of the judicial process which would be ill served if those involved in that process, litigants, attorneys, and judges, could not rely on declarations of settlement made to the court. See Correia v. Desimone, 34 Mass.App.Ct. 601, 614 N.E. 2d 1014 (1993). When settlement is communicated to the court, it is an indication that the parties have gone beyond deciding whether to give up the

right to trial in exchange for the plaintiffs' offer. Id. at 603. A court's general case flow management, its proper utilization of limited judicial resources, and the integrity of its scheduling process would be impaired if parties were simply allowed to report a case as settled on the date scheduled for trial, subsequently renege on the settlement agreement without good cause, and then reschedule the case for a new trial date. See Massey v. Stop & Shop Companies, Inc. 1998 Mass. App. Div. 117 (1998). The integrity of the judicial process would be ill served if those intimately involved in the litigation process could not rely on declarations of settlement made in court. See In re The Petition of Mal De Mer Fisheries, 884 F.Supp. 635 (D.Mass. 1995). Unless the resulting settlement is unfair, judicial economy commands that a party be held to the terms of a voluntary agreement. Id.

The parties, including Tricore, reported this case settled to the Court on July 19, 2005, and thereafter confirmed the settlement on the record at the Status Conference on September 14, 2005. As such, and for the compelling reasons set forth above, Plaintiff is judicially estopped from now claiming that a settlement was never reached.

### III. Tricore's Change of Heart Cannot Void the Settlement Agreement.

A number of relevant factors have been considered in determining whether a party should be released from a settlement agreement, including whether the party agreed to a settlement under "duress or intimidation," Turesky v. Carp, 1993 Mass. App. Div. 141, 143; whether there was fraud in the inducement of the agreement, Dominick v. Dominick, 18 Mass. App. Ct. 85, 91 (1984); and whether the agreement is "manifestly against the public interest." Carver v. Waldman, 21 Mass. App. Ct. 958, 960 n. 3 (1986). What can never, however, be deemed sufficient good cause to prevent enforcement of a settlement reached between the parties is a change of heart by one of them. See Grindlinger v. Grindlinger, 10 Mass. App. Ct. 823, 824

(1980) (a morning-after determination that the agreement … was ill-advised and burdensome was not a legally sufficient ground for reopening the case); Innis v. Innis, 35 Mass. App. Ct. 115, 118 (1993).  In addition to the prejudice and burdens which would be imposed on the party who remains willing to abide by the settlement agreement, institutional interests of the judicial system itself militate against permitting parties to avoid enforcement of a settlement agreement based on nothing more than second thoughts.  See Massey v. Stop & Shop Companies, Inc., 1998 Mass. App. Div. 117 (1998).

Here, there is no indication that Tricore's refusal to comply with the settlement is due to anything beyond a change of heart.  There is absolutely no suggestion that Tricore settled its claims as a result of duress or fraud.  Nor is there any basis to conclude that such a simple, monetary settlement would be "manifestly against the public interest."  It is clear from the record that Tricore settled its claims on one set of terms, and much later decided it preferred more favorable terms.  For good reason, such "second thoughts" are insufficient to void the settlement, and Safeco therefore requests that the Court enforce the agreement reached by the parties on July 19, 2005.

## CONCLUSION

For the reasons set forth herein, Defendant Safeco Insurance Company of America respectfully requests that the Court enforce the settlement reached with Plaintiff Tricore, Inc. on July 19, 2005.

    Respectfully submitted:

    SAFECO INSURANCE COMPANY OF
    AMERICA
    By its attorneys,

    /s/ Jonathan C. Burwood
    _____
    Bradford R. Carver , BBO#565396

|  |  |
|---|---|
|  | Jonathan C. Burwood, BBO# 643674<br>Sarah A. Billeri, BBO#661256<br>HINSHAW & CULBERTSON LLP<br>One International Place, 3rd Floor<br>Boston, MA  02110<br>(617) 213-7000 |
| Dated:  January 4th, 2006 |  |

34016522v1 856500