UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRICORE, INC. | CIVIL ACTION NO. 04-12393 (JGD) |
| VS. | |
| SAFECO INSURANCE COMPANY OF AMERICA and R.P. IANNUCCILLO & SONS CONSTRUCTION CO. | January 13, 2006 |

**DEFENDANT SAFECO INSURANCE COMPANY OF AMERICA'S REPLY TO CROSS-CLAIM PLAINTIFF R.P. IANNUCCILLO & SON CONSTRUCTION CO'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT**

The cross-claim defendant, Safeco Insurance Company of America (the "Surety"), respectfully submits its Reply to the Opposition to Motion for Partial Summary Judgment filed by the Cross-Claim Plaintiff R.P. Iannuccillo & Son Construction Co.'s ("RPI") on or about November 14, 2005.

**I.    INTRODUCTION**

In brief, RPI offers no substantive or factual basis to challenge the Surety's Motion for Partial Summary Judgment (the "Motion for Summary Judgment" or "Motion") regarding Count II of RPI's Crossclaim against the Surety. Count II of the Crossclaim relates to the Surety's alleged unfair settlement practices regarding the claim RPI made on Tricore's payment bond, which was issued by Safeco.[1]

---

[1] RPI argues that the July 19, 2005 settlement conference before Magistrate Judge Swartwood did not resolve all but Count II of RPI's crossclaim. That is just not true. Nevertheless, RPI and the Surety agree that the resolution of the other claims to this multi-party, multi-claim litigation are not germane to the adjudication of the Surety's now pending Motion for Summary Judgment, which relates to the alleged extra-contractual conduct of the Surety in resolving RPI's claims against the Tricore payment bond.

RPI has not rebutted the fact that Massachusetts General Law Chapter 176D ("Chapter 176D") contains no private right of action, nor does it controvert its lack of standing, as a business engaged in trade or commerce, to obtain relief under Chapter 176D by and through the provisions of Massachusetts General Law Chapter 93A ("Chapter 93A"), § 9.

More important, RPI has failed to establish that liability, if any, for the claim it may have had against the Tricore payment bond was "reasonably clear," even when construing the facts in the light most favorable to RPI. Very simply, RPI's Opposition Memorandum and supporting papers, when read in tandem with the Surety's moving papers, establish uncontested facts and incontrovertible evidence that a bona fide, good faith dispute existed between Tricore and RPI under the Subcontract. This dispute was real and culminated in Tricore's termination of RPI under the Subcontract. The Surety cannot be held liable for unfair or deceptive "settlement practices" under Chapter 93A as a matter of law because no reasonable person could objectively conclude that Tricore's liability to RPI under the Subcontract was reasonably clear.

Additionally, the bulk of the issues and factual allegations RPI attempts to introduce in the Affidavit of Bruce R. Iannuccillo in Opposition to Motion for Summary Judgment (the "RPI Affidavit" or "RPI Aff.") and the Affidavit of David M. Campbell, Esquire in Opposition to Motion for Summary Judgment ("Campbell Affidavit" or "Campbell Aff.") are neither genuine nor material to the issues raised in the Surety's Motion for Summary Judgment. The issues and factual allegations raised in the affidavits relate to a dispute between Tricore and RPI regarding RPI's performance bond, not Count II of the Crossclaim.

Given the undisputed facts and law presented, RPI's efforts to block summary disposition of Count II of its Crossclaim are of questionable faith, and the Motion for Summary Judgment should be granted.

II.   **ARGUMENT**

    A.   **THE SURETY IS ENTITLED TO JUDGMENT ON RPI'S CHAPTER 93A CLAIM AS A MATTER OF LAW[2]**

In the context of claims settlements, an unfair or deceptive act or practice under Chapter 93A would occur if the Surety failed to promptly, fairly, and equitably settle a claim, where **liability is reasonably clear.** See DeMatteo v. Century Indemnity Co., 182 F.Supp.2d 146, 163 (D. Mass 2001)(emphasis added). "Whether liability is reasonably clear is determined by an objective standard; the appropriate test is 'whether a reasonable person, with knowledge of the relevant facts and law would probably have concluded, for good reason, that the insurer was liable to the plaintiff." F&D Tool Co., Inc. v. Sloan Valve Co., Inc., No. 01-30154-MAP, 2002 WL31371963, *5 (D. Mass. October 17, 2002)(attached as Exhibit A). Summary judgment on this issue is appropriate when *no* reasonable person could objectively conclude that liability is reasonably clear. Id. RPI concedes that the court can ultimately make this decision. See Opposition Memorandum, p. 12 ("The threshold question of whether the claimant has satisfied the legal and factual requirements for making a claim under Chapter 93A, § 11 requires a court determination.").

---

[2] In its Opposition Memorandum, RPI implicitly concedes that no private right of action exists under Chapter 176D and that it lacks of standing, as a business engaged in trade or commerce, to obtain relief under Chapter 176D by and through the provisions of Chapter 93A, § 9.

Here, RPI has failed to establish that under this objective standard *any* reasonable person could conclude that Tricore's liability to RPI under the Subcontract was reasonably clear. Indeed, the issues and factual allegations that RPI submitted to this Court in opposition to the Motion illustrate the bona fide dispute between Tricore and RPI. For example, the RPI Affidavit provides the following:

- During the course of the work, disputes arose between RPI and Tricore regarding various payment and performance issues…RPI and Tricore each alleged that the other has breached the Subcontract and each has filed a claim against the Safeco surety bond. See RPI, Aff., ¶ 19.

- It was neither practical nor economical for Tricore to terminate RPI after completing and billing 90% of its Subcontract. More importantly, Tricore had no justification for declaring a default. See id., ¶ 22.

- RPI has consistently contended and believes it can prove that Tricore had no basis or cause to default RPI pursuant to the Subcontract…and that RPI was terminated for convenience…[and] submits that its termination was for convenience and not default and further submits that its termination occurred at a convenient point in the project. See id., ¶¶ 22, 27.

- RPI completed its work in accordance with the contract, plans, specifications, and industry standard. During the course of its performance, RPI did not receive any notice from Tricore regarding the quality of the work performed. See id., ¶ 31.

- The sixteen (16) issues [raised in Attorney Kutchin's Letter of July 30, 2003 to Ira Sussman of Safeco] refer primarily to the manner in which RPI was managing its work, including management of the project site, RPI labor and subcontractors to RPI….Most of the sixteen (16) issues are either duplicative or inconsequential. See id., ¶ 36.

- By correspondence dated September 12, 2003, RPI responded to Attorney Kutchin's July 30, 2003 letter by sending an eleven (11) page rebuttal to Ira Sussman at Safeco. RPI addressed each Tricore allegation and disputed the allegations factually and disputed that the allegations, even if true, provided a sufficient basis for termination. See id., ¶ 37.[3]

---

[3] The Surety has undertaken a thorough review of its files regarding this matter. Based on this review, it was unable to locate the September 12, 2003 response letter that RPI sent to the Surety. See Supplemental Affidavit of Ira Sussman, ¶ 4. Assuming, arguendo, that the Surety did receive RPI's September 12, 2003

4

- RPI submits that Tricore breached the subcontract agreement by failing to: (1) produce progress schedules and deliver updates; (2) interpret specifications for conformance with the work installed; (3) coordinate between the project architect and subcontractors for timely approval of work completed; (4) provide a layout and survey for building lines; (5) conduct regular project meetings; (6) administer its safety program and maintain a safe workplace; (7) delivering written notices of non-conforming work; (8) maintaining separate entrance gates for union and open shop trade contractors; (9) scheduling and sequencing the work; and (10) permitting subcontractors to complete their work without interference. See id., ¶ 38.

Conversely, the Affidavit of Paul Jacobson, President of Tricore, Inc. in Support of Motion for Summary Judgment ("Jacobson Affidavit" or "Jacobson Aff.") (attached as Exhibit A to the Motion for Summary Judgment) recites a plethora of facts which support its claims that RPI's work was defective and substantiate its decision to terminate the Subcontract. For example, the Jacobson Affidavit averred the following:

- Some of the issues exemplifying RPI's substandard performance under the Subcontract included: (1) walls being "out of plumb" (i.e. concave and/or convex rather than straight) and floors having recesses (i.e. curvature or waviness, rather than flat); (2) honeycombing and voids (i.e. concrete with pock-marks or large holes); (3) unacceptable trowel marks and footprints embedded in the concrete and cracks, peeling and flaking in the concrete; (4) unacceptable variations in the placement of concrete, resulting in (a) uneven wall heights; (5) overly wide stairs; (6) misalignment of concrete; (7) improper relief cuts in concrete that were uneven and not to the depth required by the specifications, which resulted in stress cracking of the concrete slabs; (8) improper reglet cutting of concrete, which necessitated hand-cutting and chipping to remedy the work; and (9) concrete spillage, staining and variations in the poured concrete. See Jacobson Aff., ¶ 14.

- RPI's gross mismanagement of its portion of the Project was the primary cause of the delay, confusion and additional costs to the Project…For example, RPI's involvement in the Project was plagued by high turnover among its employees and subcontractors. A total of three flatwork cement finishing subcontractors and two reinforcing subcontractors were utilized in succession by RPI during the approximately 14 months they were involved in the Project…During this same

---

letter, the RPI claim would have nevertheless been denied because it would have provided additional evidence that a bona fide, good faith dispute existed between Tricore and RPI regarding the Subcontract See id., ¶7.

time period, several of RPI's subcontractors and vendors complained that RPI was not providing them with adequate direction regarding the Project and routinely failed to pay them for work the subcontractors performed on a timely basis. See Jacobson Aff., ¶¶ 18-20.

Several exhibits attached to the Jacobson Affidavit further substantiate these allegations, one of which contained 130 photographs detailing the problems with RPI's concrete work.[4]

Neither RPI's Opposition Memorandum nor the affidavits offered up in support of the Opposition Memorandum provide anything but conclusory allegations and unsupported speculation that Tricore's termination was wrongful. See e.g. Campbell Aff., ¶ 15 ("RPI has consistently contended and believes it can prove that Tricore had no basis or cause to default RPI pursuant to the subcontract agreement and that RPI was terminated for convenience…"); RPI Aff., ¶ 23 ("RPI has consistently contended and believes it can prove that Tricore had no basis or cause to default RPI pursuant to the subcontract agreement and performance bond and that RPI was terminated for convenience…"). These conclusory allegations are not enough to defeat the Surety's Motion and, in fact, further support the Surety's claim that a bona fide dispute exists between Tricore and RPI.

To defeat a summary judgment motion, "factual specificity is required; a conglomeration of 'conclusory allegations, improbable inferences, and unsupported speculation' is insufficient to discharge the nonmovant's burden." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990).

---

[4] RPI claims in the Campbell Affidavit that the Surety's allegations regarding "quality issues" and "quality problems" were "conclusory and completely unsubstantiated and inaccurate." See Campbell Aff., ¶ 12. This is wrong. The Jacobson Affidavit with exhibits provide substantial evidence which would support Tricore's decision to terminate the Subcontract.

6

In sum, when the averments contained in the RPI affidavits are read in tandem with the Jacobson Affidavit and the Affidavit of Ira E. Sussman in Support of Motion for Summary Judgment (attached as Exhibit B to the Motion for Summary Judgment), it is clear that a bona fide dispute between Tricore and RPI existed regarding their respective performances under the Subcontract. It is likewise clear that one or more bases existed to substantiate Tricore's termination of RPI. In turn, this bona fide dispute—and Tricore's termination of RPI under the Subcontract—prevent *any* reasonable person from objectively concluding that Tricore's liability was reasonably clear. As the Surety's liability under Chapter 93A for "unfair settlement practices" cannot arise, if at all, unless liability for the claim is reasonably clear, the Surety is entitled to judgment on Count II of RPI's Crossclaim as a matter of law.

**B.    RPI'S ISSUES AND FACTUAL ALLEGATIONS REGARDING THE RPI PERFORMANCE BOND ARE NOT "GENUINE" OR "MATERIAL" FOR PURPOSES OF ADJUDICATING THE SURETY'S SUMMARY JUDGMENT MOTION**

RPI makes much in its Opposition Memorandum, RPI Affidavit, and Campbell Affidavit about the dispute between Tricore and RPI regarding RPI's performance bond. RPI's argument regarding this dispute is a complete red herring, calculated to divert attention away from the allegations contained in Count II of RPI's Crossclaim. Specifically, <u>in its brief</u> RPI claims that the following acts and/or omissions support its Chapter 93A claim:

> (1) failure to complete work under the Subcontract utilizing RPI to mitigate damages; (2) failure to complete the project utilizing Redmond Construction; (3) failure to be involved in any respect with the completion of the Subcontract; (4) permitting or compelling Tricore to self-perform all completion and repair; (5) misrepresentations that RPI would complete the Subcontract and be paid the Subcontract balance; (6) making an excessive and unconscionable proposed

7

>settlement agreement with Tricore; (7) acceptance of approximately $450,000.00 for completion costs; and (8) improper disclosure of confidential and privileged material

See Opposition Memorandum, p. 15. There are no such allegations in the Crossclaim filed by RPI. These alleged acts and/or omissions relate to <u>RPI's performance bond</u>. The issues in dispute here, however, do not relate in any way to the disagreement involving RPI's performance bond. Rather—as alleged in Count II of the Crossclaim and recounted in the Opposition Memorandum—RPI's allegations relate to the Surety's conduct in effectuating the prompt and fair settlement of RPI's claims against the Tricore payment bond. See RPI Crossclaim, ¶¶ 4-8; see also Opposition Memorandum, p. 12.

Thus, the issues and factual allegations raised by RPI are neither genuine nor material to the issues that are the subject matter of the Surety's Motion. See DePoutot v. Raffaelly, 424 F.3d. 112, 117 (1st Cir. 2005)("A factual issue is 'genuine...[if]...it may reasonably be resolved in favor of either party' and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'); Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir.1997)("Material facts are those that 'possess the capacity to sway the outcome of the litigation under the applicable law.'") As such, the issues and factual allegations raised for the first time in RPI's Opposition Memorandum, RPI Affidavit, and Campbell Affidavit need not be considered for purposes of adjudicating the Surety's Motion. Accordingly, the Surety respectfully requests that the Surety's Motion for Summary Judgment be granted.

## III. CONCLUSION

For the foregoing reasons and the reasons articulated in the Surety's Memorandum of Law in Support of its Motion for Summary Judgment, the Surety respectfully requests that

the Court grant the Surety's Motion for Summary Judgment with regard to the sole remaining claim in this action (Count II) filed by RPI.

Specifically, the Surety is entitled to summary judgment as a matter of law regarding RPI's Chapter 176D claim because there is no private right of action in Chapter 176D. The Surety is likewise entitled to summary judgment as a matter of law regarding RPI's Chapter 93A claim because, as a business engaged in trade or commerce, RPI has no standing to obtain relief under Chapter 176D by and through Section 9 of Chapter 93A, which section is limited to <u>only</u> <u>individuals</u>. Assuming that RPI does have standing to press its Chapter 176D claim through Chapter 93A, the Surety is nevertheless entitled to summary disposition of RPI's Chapter 93A claim because RPI cannot establish, as a matter of law, that under the applicable "reasonable person" standard the Surety's liability was reasonably clear and that it engaged in unfair or deceptive business practices.

CROSSCLAIM DEFENDANT,
SAFECO INSURANCE COMPANY
OF AMERICA

By /s/ Dennis C. Cavanaugh
Dennis C. Cavanaugh (BBO # 639556)
Patrick M. Birney (Admitted in CT only)
Brown Raysman Millstein Felder
& Steiner LLP
185 Asylum Street
Hartford, CT 06103
860-275-6457
Its Attorneys

## CERTIFICATION

This is to certify that on January 13, 2006, a copy of the foregoing was mailed, postage pre-paid or delivered electronically or by facsimile to the following:

Edward Kutchin
Kerry R. Northup
Kutchin & Rufo, PC
155 Federal Street, 17th Floor
Boston, MA 02110-1727
**Tricore, Inc.**

Bradford R. Carver, Esq.
Jonathan C. Burwood, Esq.
Hinshaw & Culbertson, LLP
One International Place, 3rd Floor
Boston, MA 02110
**Safeco Insurance Company of America**

David M. Campbell
Visconti & Boren, LTD
55 Dorrance Street
Providence, RI 02903
**R. P. Iannuccillo & Sons Construction Co**

/s/ Dennis C. Cavanaugh
Dennis C. Cavanaugh