# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**CIVIL ACTION NO. 04-12393MLW**

| | |
|---|---|
| **TRICORE, INC.** | : |
| | : |
| **VS.** | : |
| | : |
| **SAFECO INSURANCE COMPANY OF** | : |
| **AMERICA and R.P. IANNUCCILLO** | : |
| **& SONS CONSTRUCTION CO.** | : |

## MOTION OF DEFENDANT, R.P. IANNUCCILLO & SONS CONSTRUCTION CO. FOR LEAVE TO FILE AMENDED CROSSCLAIM AGAINST SAFECO INSURANCE COMPANY OF AMERICA

Now comes the defendant and crossclaim plaintiff, R.P. Iannuccillo & Sons Construction Co. ("RPI") and hereby moves this Court pursuant to Fed.R.Civ.P. 15(b) and Fed.R.Civ.P. 13(g) to grant it leave to file an amended crossclaim against defendant and crossclaim defendant, Safeco Insurance Company of American ("Safeco").

In support of this motion, RPI relies upon all pleadings and papers on file, and states the following:

1.      RPI entered into a subcontract agreement with plaintiff, Tricore, Inc. ("Tricore") to provide labor and materials in connection with the performance of the "cast-in-place" concrete work on a project known as "Sherrill House-Frank Wood Expansion" in Boston, Massachusetts ("the Project").

2.      Safeco provided construction surety bonds to both RPI and Tricore.  More specifically, RPI obtained a contract performance bond from Safeco (Bond 600617) and Tricore obtained a contract payment bond from Safeco (Bond 6007619).

3.      During the course of the work, disputes arose between RPI and Tricore regarding various payment and performance issues.  By letter dated July 1, 2003, Tricore terminated RPI.

4.      RPI and Tricore each allege that the other has breached the subcontract.  Tricore has filed a claim against RPI's performance bond and RPI has filed a crossclaim against Tricore's payment bond.

5.      RPI has also filed a crossclaim against Safeco for bad faith pursuant to M.G.L.c. 93A.

6.      The original crossclaim alleges that Safeco's handling of RPI's payment bond claim is violative of Chapter 93A

7.      Subsequent to RPI's filing of the original crossclaim, Safeco has violated Chapter 93A in its handling and settlement of the claim by Tricore against RPI's performance bond and Safeco's excessive and unconscionable demand for indemnification.

8.      Safeco's 93A violations pursuant to the performance bond are detailed in RPI's opposition to Safeco's motion for summary judgment and the affidavits attached thereto.  RPI seeks leave to file an amended crossclaim against Safeco more specifically describing the 93A violations relative to the performance bond.

9.      RPI contends that Safeco's conduct on the performance obligation resulted in a violation of Chapter 93A in the following respects:

  i.      Safeco's failure to defend in any respect the improper default;

  ii.     Safeco's failure to complete the project utilizing RPI for $92,061;

  iii.    Safeco's failure to complete the project utilizing Redmond Construction for $183,025;

  iv.    Safeco's failure to be involved in any respect with the completion of the project;

  v.     Safeco permitting or compelling Tricore to self-perform all completion and repair work;

vi.     Safeco's repeated misrepresentations to RPI that RPI would complete the project and be paid its contract balance;

vii.     Safeco's acceptance of approximately $450,000 for completion costs when RPI would have completed for $92,061 and Redmond Construction for $183,025;

viii.     Safeco's excessive and unconscionable settlement with Tricore;

ix.     Safeco's excessive and unconscionable demand for indemnification to RPI.

x.     Safeco's counsel's improper disclosure to Tricore of confidential and privileged materials prepared by RPI's counsel and Safeco's counsel discussing settlement strategy and settlement value shortly before mediation.

10.     RPI submits that Safeco's egregious failure to properly discharge its performance bond obligations created bad faith liability to Tricore which Safeco resolved with an excessive settlement to Tricore utilizing RPI contract balances and dismissal of all RPI claims.

11.     In addition, Safeco has made a demand for full indemnification to RPI for $310,000 wherein Safeco attempts to shift all responsibility for its failure to complete the project in accordance with its bond obligation to RPI.

12.     RPI's motion to amend does not add new parties or new claims. Tricore's original complaint filed in November of 2004 contains a claim for bad faith against Safeco pursuant to Chapter 93A for Safeco's failure to perform its obligations on the RPI performance bond. RPI's amended crossclaim complains of the same failure to perform by Safeco.

13.     RPI first gave notice to Safeco regarding Safeco's bad faith failure to comply with its performance obligations by letter dated October 18, 2004 *(Attached Exhibit "A")*. RPI gave additional notice to Safeco on June 16, 2005 relative to the bad faith disclosure of privileged and

confidential materials to Tricore prior to mediation *(Attached Exhibit "B")*.

14.    No party to this action will be prejudiced by the allowance of this motion.

15.    Justice and judicial economy require that this court allow this motion so that all claims arising out of the project which is the subject matter of the underlying complaint, may be decided in one forum.

WHEREFORE, R.P. Iannuccillo & Sons Construction Co. respectfully requests that this court grant it leave to file an amended crossclaim in the form attached.

Defendant/Crossclaim Plaintiff
*R.P. Iannuccillo & Sons Construction Co.*
By its Attorneys:


/s/ David M. Campbell
David M. Campbell, Esq. (BBO #645512)
*Visconti & Boren, Ltd.*
55 Dorrance Street
Providence, RI 02903
*Telephone:* 401/331-3800
*Facsimile:* 401/421-9302


/s/ David E. Wilson
David E. Wilson, Esquire (BBO 541968)
Corwin & Corwin LLP
1 Washington Mall, Suite 5
Boston, MA  02108


## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that a copy of the foregoing has been furnished by U.S. Mail, postage prepaid, this 19th day of January, 2006, to:

Edward D. Kutchin, Esquire
Kerry R. Northup, Esquire
Kutchin & Rufo, P.C.
155 Federal Street
Boston, MA 02110

4

Bradford R. Carver, Esquire
Jonathan C. Burwood, Esquire
Hinshaw & Culbertson LLP
One International Place
Fort Hill Square, 3rd Floor
Boston, MA 02110

Dennis C. Cavanaugh, Esquire
Brown, Raysman, Millstein, Felder & Steiner
Cityplace II, 10th Floor
185 Asylum Street
Hartford, CT 06103

/s/ David M. Campbell



VISCONTI AND BOREN LTD

COUNSELORS-AT-LAW

- Girard R. Visconti

  Richard A. Boren

  Dante J. Giammarco

- David M. Campbell

- Stephen M. Brusini

- Jessica L. Papazian-Ross

- Lillian M. Jacquard

  Eric G. Cimino

- Christine L. Rossi

*Of Counsel*
- Gregory P. Cimino, II

- also admitted in MA
- also admitted in MA and NY
- also admitted in CT and DC

October 18, 2004

*Via Facsimile and Regular Mail*
John E. Sebastian, Esq.
Leo & Weber, P.C.
One North LaSalle Street, Suite 3600
Chicago, IL 60602

|  | | |
|---|---|---|
| **Re:** | **Principal:** | ***Tricore, Inc.*** |
|  | **Claim #:** | ***12E 03196 0258*** |
|  | **Bond #:** | ***6007619*** |
|  | **Claimant:** | ***R.P. Iannuccillo & Sons*** |
|  | **Project:** | ***Sherrill House-Frank Wood Expansion, Boston, MA*** |
|  | **Surety:** | ***SAFECO Insurance Company of America*** |

Dear John:

As you know, RPI is still awaiting the backup documentation supporting Tricore's claim. RPI cannot properly analyze the claim and respond or schedule a meeting without this documentation. The only information provided to RPI is a summary spreadsheet with raw numbers under general categories. RPI will not make a proposal on the basis of a summary sheet.

As discussed, RPI is willing to meet and discuss a global settlement of all claims between all parties if there is some common ground. You seem unwilling or incapable of providing meaningful information in a timely manner. Moreover, SAFECO has provided RPI with absolutely no support and has not acted promptly in mitigating the potential damages incurred by Tricore for which SAFECO will seek indemnification against RPI.

SAFECO appears prepared to settle the Tricore claim for a very large number and fall back on the RPI indemnity agreement. Given the fact that SAFECO has not even examined Tricore's supporting documentation, SAFECO's interest in paying a "settlement splitting difference" of $228,525 is troubling to RPI.



# VISCONTI AND BOREN LTD

COUNSELORS-AT-LAW

■ Girard R. Visconti

Richard A. Boren

Dante J. Giammarco

■ David M. Campbell

■ Stephen M. Brusini

● Jessica L. Papazian-Ross

■ Lillian M. Jacquard

Eric G. Cimino

■ Christine L. Rossi

*Of Counsel*
▼ Gregory P. Cimino, II

■ also admitted in MA
▼ also admitted in MA and NY
● also admitted in CT and DC

RPI disputes the default/termination and prepared a point-by-point rebuttal to Tricore dated September 12, 2003. I have attached a copy for your convenience. The damages allegedly sustained by Tricore are also disputed. Using Forcon's estimate for backcharges, $36,929 and RPI's willingness to complete for approximately $92,000, it is difficult to accept your summary as a reasonable basis for a settlement when there is a contract balance of $216,429.

None of the 16 items identified by Tricore in its notice of termination provide a basis for a default, individually or collectively. You have stated that the default was for the performance of deficient work and general poor workmanship. Given the retainage in the amount of $77,343 and alleged deficient work in the amount of $36,929 (according to Forcon), there simply is no default. SAFECO also failed to perform in a reasonable and timely manner in arranging for the completion of the work by RPI.

After the Tricore documents are collected and reviewed, perhaps Safeco and RPI should meet before any further discussions with Tricore. If this matter cannot be resolved, RPI would file suit against the payment bond seeking payment in the amount of $124,368 representing requisition No. 11 ($47,025) and retainage ($77,343). I look forward to hearing from you at your earliest convenience.

Very truly yours,

David M. Campbell

DMC/lat
Enclosure
cc:    R.P. Iannuccillo & Sons Construction Company



VISCONTI AND BOREN LTD

COUNSELORS-AT-LAW

- Girard R. Visconti

  Richard A. Boren

  Dante J. Giammarco

- David M. Campbell

- Jessica L. Papazian-Ross

- Lillian M. Jacquard

- Amy E. Stratton

*Of Counsel*
▼Gregory P. Cimino, II

- also admitted in MA
▼ also admitted in MA and NY
- also admitted in CT and DC

June 16, 2005

Jonathan C. Burwood, Esquire
Cetrulo & Capone LLP
Two Seaport Lane
Boston, MA 02210

> Re:  *Tricore, Inc. v. Safeco Ins. Co. of America & R.P. Iannuccillo & Sons*
> *C.A. No.: 04-12393-MLW*

Dear John:

I am in receipt of the document disclosure which you have provided on behalf of Safeco (Performance). I have not reviewed all of the documents which you have identified as "non-privileged".

However, after a very quick review, I cannot agree with the "non-privileged" characterization. The first document (001) is a letter I prepared as counsel for RPI to Attorney Sebastian as counsel for Safeco discussing litigation strategy, settlement value, and Safeco's recommendation for settlement. This letter also questions Safeco's performance of its obligations under the performance bond.

Another document provided by Safeco contains the heading "privileged communication-joint defense privilege communication" and is written by Attorney Sebastian and suggests "that a reasonable amount for Tricore's claim would be $156,229". This communication contains a spreadsheet prepared by Attorney Sebastian comparing Tricore's claim with the analysis prepared by FORCON as a consultant to Safeco (020). Immediately after that disclosure, Safeco has provided the FORCON report together with analysis (029).

Jonathan C. Burwood, Esquire
June 16, 2005
Page -2-

       I have only reviewed 30 pages out of the 454 page Safeco production. I believe that the materials described above are both privileged and confidential containing attorney-client materials, work product and settlement discussions. I am concerned that these disclosures have compromised the defense of RPI.

                 Very truly yours,

                 David M. Campbell

DMC:amm
cc:   *R.P. Iannuccillo & Sons Construction Company*

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

### CIVIL ACTION NO. 04-12393MLW

| | |
|---|---|
| TRICORE, INC. | : |
| | : |
| VS. | : |
| | : |
| SAFECO INSURANCE COMPANY OF | : |
| AMERICA and R.P. IANNUCCILLO | : |
| & SONS CONSTRUCTION CO. | : |

## AMENDED ANSWER OF DEFENDANT, R.P. IANNUCCILLO & SONS CONSTRUCTION CO. TOGETHER WITH COUNTERCLAIM AND AMENDED CROSSCLAIM

### PARTIES

1.    Defendant, R.P. Iannuccillo & Sons Construction Co. ("RPI") admits the allegations contained in paragraph 1 of plaintiff's complaint.

2.    RPI neither admits nor denies the allegations contained in paragraph 2 of plaintiff's complaint as they do not concern this defendant.

3.    RPI admits the allegations contained in paragraph 3 of plaintiff's complaint.

### JURISDICTION

4.    RPI admits the allegations contained in paragraph 4 of plaintiff's complaint.

5.    RPI neither admits nor denies the allegations contained in paragraph 5 of plaintiff's complaint as they do not concern this defendant.

6.    RPI admits the allegations contained in paragraph 6 of plaintiff's complaint.

7.    RPI neither admits nor denies the allegations contained in paragraph 7 of plaintiff's complaint and leaves plaintiff to its proof thereon.

### FACTS

8.    RPI neither admits nor denies the allegations contained in paragraph 8 of plaintiff's complaint and leaves plaintiff to its proof thereon.

9.    RPI admits entering into a subcontract agreement with plaintiff and states that said subcontract speaks for itself.

10.     RPI admits obtaining a contract performance bond from defendant, Safeco Insurance Company of America ("Safeco") for the project and states that said contract performance bond speaks for itself.

11.     With regard to the allegations contained in paragraph 11 of plaintiff's complaint, RPI admits receiving complaints from plaintiff regarding its performance of the subcontract and states that these complaints were unsubstantiated or that defendant, RPI, was willing and capable of correcting any alleged deficiencies in a timely manner.

12.     With regard to the allegations contained in paragraph 12 of plaintiff's complaint, RPI admits that it was terminated by letter dated July 1, 2003 and states that said termination was without cause or justification pursuant to the subcontract agreement and the performance bond.

13.     RPI neither admits nor denies the allegations contained in paragraph 13 of plaintiff's complaint as they do not concern this defendant.

14.     RPI neither admits nor denies the allegations contained in paragraph 14 of plaintiff's complaint as they do not concern this defendant and leaves plaintiff to its proof thereon.

15.     RPI neither admits nor denies the allegations contained in paragraph 15 of plaintiff's complaint as they do not concern this defendant and leaves plaintiff to its proof thereon.

16.     RPI neither admits nor denies the allegations contained in paragraph 16 of plaintiff's complaint as they do not concern this defendant and leaves plaintiff to its proof thereon.

17.     RPI denies the allegations contained in paragraph 17 of plaintiff's complaint.

18.     RPI denies the allegations contained in paragraph 18 of plaintiff's complaint.

## <u>COUNT I - Breach of Contract</u>
### (Safeco)

19.     RPI incorporates its response to paragraphs 1 through 18 of plaintiff's complaint as if set forth in full herein.

20.     RPI neither admits nor denies the allegations contained in paragraph 20 of plaintiff's complaint as they do not concern this defendant.

21.     RPI neither admits nor denies the allegations contained in paragraph 21 of plaintiff's complaint as they do not concern this defendant.

## COUNT II - Violation of M.G.L. c. 93A and M.G.L. c. 176D
### (Safeco)

22.    RPI incorporates its response to paragraphs 1 through 21 of plaintiff's complaint as if set forth in full herein.

23.    RPI neither admits nor denies the allegations contained in paragraph 23 of plaintiff's complaint as they do not concern this defendant.

24.    RPI neither admits nor denies the allegations contained in paragraph 24 of plaintiff's complaint as they do not concern this defendant.

25.    RPI neither admits nor denies the allegations contained in paragraph 25 of plaintiff's complaint as they do not concern this defendant.

## COUNT III - Breach of Contract of Good Faith and Fair Dealing
### (Safeco)

26.    RPI incorporates its response to paragraphs 1 through 25 of plaintiff's complaint as if set forth in full herein.

27.    RPI neither admits nor denies the allegations contained in paragraph 27 of plaintiff's complaint as they do not concern this defendant.

## COUNT IV - Declaratory Judgment
### (Safeco)

28.    RPI incorporates its response to paragraphs 1 through 27 of plaintiff's complaint as if set forth in full herein.

29.    RPI neither admits nor denies the allegations contained in paragraph 29 of plaintiff's complaint as they do not concern this defendant.

30.    RPI neither admits nor denies the allegations contained in paragraph 30 of plaintiff's complaint as they do not concern this defendant.

31.    RPI neither admits nor denies the allegations contained in paragraph 31 of plaintiff's complaint as they do not concern this defendant.

32.    RPI neither admits nor denies the allegations contained in paragraph 32 of plaintiff's complaint as they do not concern this defendant.

### COUNT V - Breach of Agreement
### (Iannuccillo)

33.  RPI incorporates its response to paragraphs 1 through 32 of plaintiff's complaint as if set forth in full herein.

34.  RPI denies the allegations contained in paragraph 34 of plaintiff's complaint.

35.  RPI denies the allegations contained in paragraph 35 of plaintiff's complaint.

WHEREFORE, defendant, R.P. Iannuccillo & Sons Construction Company, respectfully requests that plaintiff's complaint be dismissed and defendant be awarded its costs thereon.

### COUNT VI - Violation of M.G.L. c. 93A
### (Iannuccillo)

36.  RPI incorporates its response to paragraphs 1 through 36 of plaintiff's complaint as if set forth in full herein.

37.  RPI denies the allegations contained in paragraph 37 of plaintiff's complaint.

38.  RPI denies the allegations contained in paragraph 38 of plaintiff's complaint.

39.  RPI denies the allegations contained in paragraph 39 of plaintiff's complaint.

WHEREFORE, defendant, R.P. Iannuccillo & Sons Construction Company, respectfully requests that plaintiff's complaint be dismissed and defendant be awarded its costs thereon.

### COUNT VII - Breach of Covenant of Good Faith and Fair Dealing
### (Iannuccillo)

40.  RPI incorporates its response to paragraphs 1 through 39 of plaintiff's complaint as if set forth in full herein.

41.  RPI denies the allegations contained in paragraph 41 of plaintiff's complaint.

WHEREFORE, defendant, R.P. Iannuccillo & Sons Construction Company, respectfully requests that plaintiff's complaint be dismissed and defendant be awarded its costs thereon.

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred or limited by its material breaches of the subcontract agreement with R.P. Iannuccillo & Sons Construction Co.

### SECOND AFFIRMATIVE DEFENSE

4

Plaintiff's claims may be barred in whole or in part due to its failure to mitigate damages.

## THIRD AFFIRMATIVE DEFENSE

Any damage allegedly incurred by plaintiff has been caused by others for whom defendant is not responsible.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred or limited to the extent the plaintiff did not comply with the conditions precedent set forth in the subcontract agreement and/or the performance bond.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claim against defendant pursuant to the subcontract agreement is subject to back charges and/or set offs by R.P. Iannuccillo & Sons Construction Co.

## SIXTH AFFIRMATIVE DEFENSE

The fair and reasonable value of plaintiff's claim does not meet the diversity jurisdiction requirements specified by 28 USC §1332.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claim is subject to mandatory arbitration/mediation pursuant to the terms of the subcontract agreement.

Defendant,
***R.P. Iannuccillo & Sons Construction Co.***
By their Attorneys:

David M. Campbell, Esq. (BBO 645512)
***Visconti & Boren, Ltd.***
55 Dorrance Street
Providence, RI 02903
***Telephone:*** 401/331-3800
***Facsimile:*** 401/421-9302

5

David E. Wilson, Esquire (BBO 541968)
Corwin & Corwin LLP
1 Washington Mall, Suite 5
Boston, MA  02108

## COUNTERCLAIM AGAINST TRICORE, INC.

1.    Defendant and counterclaim-plaintiff, R.P. Iannuccillo & Sons Construction Co. ("RPI")
      provided valuable labor and materials to plaintiff and counter-defendant, Tricore, Inc.
      ("Tricore") pursuant to a subcontract agreement on a project known as "Sherrill House-
      Frank Wood Expansion" in Boston, Massachusetts ("the Project").

2.    Tricore entered into an agreement to perform services as a general contractor for Sherrill
      House, Inc. relating to said project and as required by the general contract, Tricore
      obtained a payment bond guaranteeing payment to subcontractors providing labor and
      materials upon the project.

3.    Tricore obtained contract payment Bond No. 6007619 from crossclaim-defendant, Safeco
      Insurance Company of America ("Safeco") in the amount of $8.4 million **(See attached
      Exhibit 1)** and RPI obtained contract performance Bond No. 600617 from Safeco in the
      amount of $863,497 **(See attached Exhibit 2)**.

4.    During the course of the work performed by RPI pursuant to the subcontract agreement,
      disputes arose between RPI and Tricore regarding various payment and performance
      issues.

5.    During the performance of the subcontract work, RPI repeatedly notified Tricore of its
      persistent failure to comply with the subcontract agreement and maintain the job progress
      schedule.

6.    Specifically, Tricore failed to properly schedule the subcontract work and provide RPI
      timely access to the subcontract work; improperly interfered with the performance of
      work by RPI; and failed to make timely payments of subcontract monies owed to RPI.

7.    Tricore wrongfully terminated RPI from the project by letter dated July 1, 2003 and
      Tricore notified Safeco that it was seeking the benefits and protections of the
      performance bond obtained by RPI for the project.

8.      The original subcontract price was $863,497 with change orders in the amount of $1,997 for an adjusted contract price of $865,494. The fair value of the work completed by RPI prior to termination is $773,433. Tricore paid RPI $649,065 for its work. The subcontract balance was $92,061.

9.      RPI is owed $47,025 for contract work performed as reflected by pay application No. 11 and $77,343 in contract retainage monies for a total of $124,368 owed for labor and materials provided by RPI pursuant to the subcontract agreement with Tricore.

## COUNT I - Breach of Contract (Tricore)

10.     RPI repeats the allegations contained in previous paragraphs as if set forth in full herein.

11.     Tricore breached the subcontract agreement with RPI by failing and refusing to pay RPI for labor and materials provided on the project and by wrongfully terminating RPI without cause or justification.

12.     As a direct and proximate result of Tricore's breach, RPI has sustained substantial contract damages, including lost profits, contract balance and contract retainage.

        WHEREFORE, R.P. Iannuccillo & Sons Construction Co., respectfully demands that this honorable court award damages against defendant, Tricore, Inc., plus interest, costs and reasonable attorney's fees.

## COUNT II - Quantum Meruit (Tricore)

13.     RPI repeats the allegations contained in previous paragraphs as if set forth in full herein.

14.     Tricore has received the full benefit and value of the labor and materials delivered by RPI to the project and Tricore has failed and refused to make fair payment for said labor and materials.

15.     Tricore has been unjustly enriched at the expense of RPI and RPI is entitled to payment for the fair value of the labor and materials provided on the project prior to the wrongful termination.

        WHEREFORE, R.P. Iannuccillo & Sons Construction Co., respectfully demands that this honorable court award damages against defendant, Tricore, Inc., plus interest, costs and reasonable attorney's fees.

## COUNT III - Violation of M.G.L. c. 93A (Tricore)

16.    RPI repeats the allegations contained in previous paragraphs as if set forth in full herein.

17.    RPI has complied in all respects with its duties and obligations pursuant to the subcontract agreement, providing labor and materials in a timely and workmanlike manner, without fault or defect, and has been always willing and capable of completing its performance of the subcontract agreement.

18.    Tricore has failed and refused to comply with its duties and obligations pursuant to the subcontract agreement and has acted without justification and in bad faith by wrongfully refusing to make fair payment to RPI and wrongfully terminating the subcontract agreement with RPI..

19.    The intentional and willful actions of Tricore and its treatment of RPI on the project represent unfair and/or deceptive acts and practices in violation of M.G.L. c. 93A.

20.    As a direct and proximate result of Tricore's wrongful conduct as described herein, RPI has incurred substantial damages and will continue to incur additional damages and attorney's fees.

WHEREFORE, plaintiff, R.P. Iannuccillo & Sons Construction Co., demands that judgment be entered in its favor and against Tricore, Inc., for its damages, attorney's fees and treble damages pursuant to M.G.L. c. 93A.

## AMENDED CROSSCLAIM AGAINST
## SAFECO INSURANCE COMPANY OF AMERICA

### COUNT I - Payment Bond Claim (Safeco)

1.    RPI repeats the allegations contained in previous paragraphs of the counterclaim as if set forth in full herein.

2.    The payment bond issued by Safeco obligates Safeco to pay RPI for the labor and materials provided to Tricore on the Project pursuant to the subcontract agreement which Tricore is unable or unwilling to pay to RPI.

3.    RPI is owed contract monies and contract retainage on the Project and Safeco owes the outstanding balance of $124,368 to RPI pursuant to the payment bond and the subcontract agreement with Tricore and/or for quantum meruit.

WHEREFORE, plaintiff, R.P. Iannuccillo & Sons Construction Co., demands that judgment be entered in its favor and against Safeco Insurance Company of America in the amount of $124,368 plus interest, legal fees and costs of this action.

## COUNT II - Performance Bond Claim (Safeco)

4.    RPI repeats the allegations contained in previous paragraphs of the counterclaim as if set forth in full herein.

5.    The performance bond issued by Safeco obligates Safeco to promptly remedy any alleged performance default by RPI on the project including completing and/or repairing RPI's work.

6.    Tricore alleged a performance default by RPI and Safeco failed and refused to promptly remedy the alleged default in any manner as required by the terms of the performance bond.

7.    Safeco's failure to remedy the alleged default compelled Tricore to self-perform RPI's work at considerable additional cost and expense to RPI. In the alternative, Safeco permitted Tricore to self-perform RPI's work at considerable additional cost and expense to RPI.

      WHEREFORE, plaintiff, R.P. Iannuccillo & Sons Construction Co. demands that judgment be entered in its favor and against Safeco Insurance Company of America for the losses that RPI incurred plus interest, legal fees and costs of this action.

## COUNT III - Violation of M.G.L. c. 93A-Payment and Performance Bond (Safeco)

8.    RPI repeats the allegations contained in previous paragraphs of the crossclaim as if set forth in full herein.

9.    On or about February, 2002, RPI's bonding agent, Joseph Lane ("Lane") asked whether RPI would work on a $17,000,000 project in Boston for Tricore, another client of Lane's office. Lane explained that the president of Tricore, Paul Jacobson ("Jacobson") had a good relationship with the owner of the project, Sherrill House, Inc. ("Owner"), but that Safeco was only willing to provide bonding to Tricore for the project in the amount of $7,869,363, less than half of the overall project budget because Tricore had no experience with a project of this size.

10.   Lane requested that RPI submit a proposal for the concrete work to Tricore. Although it was not RPI's custom or practice as a subcontractor to provide surety bonds to the Owner for the benefit of the general contractor, Lane also requested that RPI provide 100% performance and payment bonds to Tricore identifying Tricore, the Owner, and Sovereign Bank as obligees on said bonds.

11.   In addition to RPI providing surety bonds to the Owner for Tricore's benefit, Lane further explained that Safeco required that Tricore submit for Safeco's approval the name of a competent superintendent/project manager for the Project. According to Lane, Jacobson submitted the name of Peter Brady ("Brady"), Jacobson's father-in-law. Lane

informed RPI that Brady had extensive experience as a construction superintendent for General Cinema's building multi-screen theaters around Massachusetts, and that Brady would perform multiple duties on the project including purchasing, project management, project engineering/surveying and project superintendence. In addition, Tricore would perform the excavation of the parking garage portion of the Project, including design and installation of an earth support system.

12.    RPI submitted a proposal and subsequently entered into a subcontract agreement with Tricore dated April 25, 2002 to provide labor and materials in connection with the performance of the "cast-in-place" concrete work for the parking garage.    The subcontract was in the original amount of $863,497 and the scope of work included foundations and footings, foundation walls, and slab on grade concrete floors and stairs together with related concrete work.

13.    Prior to even beginning its work, RPI had significant disagreements with Brady regarding the earth support system designed by Brady and installed by Tricore.    Specifically, RPI advised Brady that the earth support system was showing visual signs of weakening and was in grave danger of failing.    Ultimately, Brady agreed and Tricore was required to install lateral bracing.    Later, during the construction of the footings and walls, RPI's safety officer instructed RPI workers to stop working until additional bracing was installed by Tricore on the earth support system.    The additional bracing was installed and the RPI workers returned to the site.

14.    Although these disagreements were resolved in RPI's favor, they served to turn Brady against RPI immediately.    RPI foremen repeatedly reported that Brady was unreasonable, disagreeable and impossible to satisfy.    Subcontractors retained by RPI to perform concrete flat work refused to complete their work because of Brady's behavior.

15.    RPI subsequently learned that Brady had been indicted on Federal charges involving financial fraud and tax evasion arising from his duties as construction superintendent on various General Cinemas' projects in Massachusetts.    Tricore removed Brady from the project and Brady was sentenced and incarcerated.

16.    Safeco knew or should have known that Brady was not a competent superintendent/project manager capable of fairly and honestly discharging his project duties, and that Tricore was incapable of completing the Project successfully. Safeco also knew or should have known that issues Brady and Tricore attributed to RPI were in fact attributable to Brady and Tricore.

17.    During the course of the work, additional  disputes arose between RPI and Tricore regarding various payment and performance issues.    By letter dated July 1, 2003, after RPI had completed its last major work it could perform before Tricore performed significant further work, Tricore terminated RPI.

18.    Tricore's notice of termination, speaks generally about RPI's failure to "provide work on

10

the Project in a good and workmanlike manner" and generally claims that RPI has delayed the progress of the Project. These allegations are completely unsubstantiated and inaccurate, and Tricore has provided no evidence that the Project architect and/or the owner were dissatisfied in any respect with the work of RPI or were involved in any respect with the termination of RPI.

19.    At the time of its termination, RPI had completed and billed approximately 90% of its subcontract price. All previous applications for payment (10) had been paid in full subject only to retainage by Tricore. During the course of its performance, RPI did not receive any notice from Tricore regarding the necessity of repairs to the work performed by RPI on the Project or any notice of back charges from Tricore regarding the work performed by RPI on the Project.

20.    Tricore had no justification for declaring a default, and wrongfully terminated RPI for its own convenience. As a result, RPI is owed $124,368 for contract work and contract retainage for labor and materials provided on the project prior to termination. More specifically, RPI is owed $47,025 as reflected by pay application #11 and $77,343 for contract retainage for pay applications 1 to 10.

21.    After termination, RPI received a letter dated July 30, 2003 from Attorney Kutchin for Tricore to Ira Sussman at Safeco detailing the alleged basis for RPI's termination **(See attached Exhibit 3)**.

22.    Attorney Kutchin's letter details sixteen issues which allegedly support RPI's termination. None of these sixteen issues, individually or collectively, represent a default by RPI justifying termination. These sixteen issues do not relate to the quality of the work or the necessity for repairs to the work. Instead, they refer primarily to the manner in which RPI was managing its work, including management of the Project site, RPI labor, and subcontractors to RPI, and complaints about wage reports and lien releases. Most of the sixteen issues are either duplicative or inconsequential.

23.    By correspondence dated September 12, 2003, RPI responded to Attorney Kutchin's July 30, 2003 letter by sending an eleven-page rebuttal to Ira Sussman at Safeco. RPI addressed each Tricore allegation, and disputed the allegations factually and disputed that the allegations, even if true, provided a sufficient basis for termination **(See attached Exhibit 4)**. Moreover, Tricore held $77,343 as retainage at the time of termination which was sufficient to address all "workmanship issues" or "quality issues".

24.    Tricore and Safeco knew or should have known that RPI was terminated for convenience and not default, and that RPI was owed its contract balance in the amount of $124,368.

25.    At the time of RPI's termination, Tricore possessed $216,429 in contract funds to complete the concrete work taking into account amounts billed by RPI and unpaid ($124,368) and the unbilled balance to complete ($92,061).

11

26.     Upon information and belief, no concrete work within RPI's subcontract was performed between July 1, 2003 and February, 2004. During that time, on or about November of 2003, counsel for RPI had conversations with Kirk Austin ("Austin"), the claims adjuster for Safeco on the performance claim against RPI. Austin confirmed a completion cost of "less than $100,000" and characterized the repair work as not more extensive than "what happens on every job".

27.     Following notice of termination and prior to litigation, Safeco was represented by Attorney John B. Sebastian of Leo & Weber, P.C. located in Chicago, Illinois. During this time, counsel for RPI communicated regularly with Attorney Sebastian, by telephone, regular mail and e-mail.

28.     On or about November of 2003, Austin, for Safeco, indicated that RPI would be permitted to return to the project and complete its subcontract under agreement with Safeco, and RPI would be paid its contract balance of $216,429 for work completed ($124,368) and the unbilled balance to complete ($92,061).

29.     By letter dated February 19, 2004, RPI requested that Austin provide an update and a copy of the proposed completion agreement which had been submitted to Tricore by Safeco under which RPI would complete its work on the Project. By letter dated May 24, 2004, Attorney Sebastian provided a copy of a proposed draft agreement for review and approval. After discussion and negotiation, Attorney Sebastian forwarded the final version of the completion agreement between RPI and Safeco by correspondence dated June 25, 2004.

30.     RPI and all indemnitors signed and returned the completion agreement the first week of July, 2004. **(See attached Exhibit 5)**.

31.     From November, 2003 through July 12, 2004, RPI understood that Safeco would complete the Project utilizing RPI and RPI would be paid its contract balance. During this period, Safeco, by and through Austin and Attorney Sebastian, repeatedly represented that RPI would complete its subcontract work and be paid its contract balance.

32.     By letter dated July 12, 2004, Attorney Kutchin, for Tricore, rejected the proposed completion agreement wherein Safeco would utilize RPI.

33.  By letter dated July 27, 2004, Attorney Sebastian in a letter to Attorney Kutchin states the following:

> "It is amazing that Tricore now, nearly eight months later, objects to Safeco using RPI as its completion contractor since not only does Safeco have the right to select its own contractor under the bond but, more importantly, Tricore has always been aware that Safeco desired to utilize RPI to mitigate the costs to complete the project and Tricore never objected to Safeco using RPI". **(See attached Exhibit 6).**

34.  Attorney Sebastian goes on to characterize Tricore's objection to RPI as unreasonable, untimely and prejudicial. Attorney Sebastian complains that Tricore "is stripping Safeco of its contractual right to arrange for performance to mitigate its damages".

35.  By letter dated July 29, 2004, Attorney Kutchin responds to Attorney Sebastian providing Tricore's position regarding completion of the project and Safeco's failure to fulfill its obligations pursuant to the performance bond. Specifically, Attorney Kutchin stated:

> "It is apparent that Safeco does not want to fulfill its obligations under the bond or complete the remaining work and remedy the defective work utilizing a competent contractor but merely wants to spend the least amount of money to have it appear that it fulfilled its contractual obligations. Both Tricore and the owner will not be coerced into following this imprudent approach. Moreover, their patience with Safeco's dilatory approach to fulfilling its obligations under the bond has reached its limit. Therefore, unless I receive written confirmation from Safeco by Friday, August 6, 2004 that Safeco has retained Redmond Construction to complete the remaining work and remedy the defective work as soon as possible, Tricore will be forced to file a lawsuit immediately". **(See attached Exhibit 7).**

36.  Upon information and belief, at this point in time, most of the completion work and all of the alleged repair work had not been performed.

37.  Tricore rejected a completion agreement with Safeco utilizing RPI, however, Tricore approved of Redmond Construction to complete the project. Redmond Construction's price to complete the work was $183,025.

38.  Neither RPI nor Redmond Construction completed RPI's subcontract work on the Project. Safeco did not complete the Project or arrange for the completion of the Project as required by the performance bond. Rather, despite RPI's willingness to complete for $92,061 and Redmond Construction's willingness to complete for $183,025, Safeco permitted Tricore to self-perform the work, who then submitted a claim for completion

13

costs (without repair) in the amount of $451,023.

39.    Safeco's repeated misrepresentations to RPI that RPI would complete the project and be paid its contract balance, complete disregard for the rights of RPI under the performance bond and Safeco's abject failure to be involved in any respect with the completion of the project represent unfair and/or deceptive acts in violation of M.G.L. c. 93A.

40.    On July 19, 2004, the parties engaged in mediation.  At mediation Tricore updated and amended its claim and made hand notations on the claim summary.  Tricore added a claim for $35,824 at mediation and updated legal fees to $37,234 and interest at 12% to $78,052 for a total claim of $458,844.  **(See attached Exhibit 8).**  After crediting RPI's subcontract balance and with interest, legal fees and the claim added at mediation removed, Tricore's alleged damages to complete and repair the work of RPI are $307,735.

41.    Despite significant questions regarding RPI's default, Tricore's damages and Safeco's own failure to perform, Safeco agreed to pay Tricore $300,000 after one-half day of mediation.  Safeco now seeks full indemnification from RPI for all sums imprudently expended to complete RPI's work.  Safeco's demand for indemnification indicates that Safeco accepts no responsibility for their failure to complete the work and mitigate RPI's damages on an improper termination for convenience.  **(See attached Exhibit 9).**

42.    RPI's submits that the mediation was a sham and that Safeco had decided prior to the mediation that it would settle Tricore's claim for full payment of all completion damages without regard to RPI's rights on the performance bond.

43.    On the morning of the mediation, prior to the mediator conducting any sessions, Patricia Catanese, the regional bond manager for Safeco, approached Bruce Iannuccillo, president of RPI and RPI's counsel, and told Iannuccillo that RPI should settle all claims that day and make a significant payment to effectuate the settlement.

44.    Catanese, for Safeco, advised Iannuccillo to ignore any contrary advice from counsel because counsel was only interested in litigation and a significant fee.

45.    Safeco's participation in the sham mediation, proceeding with an unconscionable settlement and then seeking indemnification from RPI  represent unfair and/or deceptive acts in violation of M.G.L. c. 93A.

46.    Safeco retained a claims consultant, Forcon International-NE, LLC ("Forcon") to inspect the RPI subcontract work and provide an estimate to complete and correct.  As of September, 2004, Forcon estimated total completion costs to be $242,025 and the cost to repair to be $79,583.

47.    This report from Forcon together with other reports and correspondence from Attorney Sebastian were expressly provided by Safeco to RPI under the "Joint Defense Privilege".

14

48.    On or about May 25, 2005, Safeco's counsel herein, Brad Carver and Jonathan Burwood, provided a 454 page "Initial Disclosure" to all counsel of record and these disclosures included privileged and confidential materials which had been marked by Attorney Sebastian as "Joint Defense Privileged" documents.  These included:

a)    correspondence from RPI's counsel dated October 18, 2004 to Attorney Sebastian as counsel for Safeco discussing litigation strategy, settlement value and default/damages issues.  **(See attached Exhibit 10).** and

b)    An e-mail written by Attorney Sebastian dated September 29, 2004 that suggests "that a reasonable amount for Tricore's claim would be $156,229".  This communication contains a spreadsheet prepared by Attorney Sebastian comparing Tricore's claim with the analysis prepared by Forcon as a consultant to Safeco.  **(See attached Exhibit 11).**

c)    The Forcon report and analysis.  **(See attached Exhibit 12).**

49.    By correspondence dated June 16, 2005, RPI's counsel complained to Safeco's counsel that these improper disclosures have compromised the mediation and the defense of RPI.  **(See attached Exhibit 13).**  Shortly thereafter, counsel for RPI spoke to Attorney Carver and Burwood about these disclosures and they stated the disclosures were intentional, not inadvertent and that Attorney Sebastian had mistakenly identified these materials under the "Joint Defense Privilege".

50.    The intentional disclosure of privileged and confidential materials discussing litigation strategy, settlement strategy, and settlement value by counsel for Safeco shortly before mediation represent unfair and/or deceptive acts in violation of M.G.L. c. 93A.

51.    The investigation and denial of RPI's payment claim by Safeco is part of the pattern of bad faith actions taken by Safeco in the resolution of all claims, payment and performance by RPI and Tricore.

52.    In settling the claim made by Tricore against RPI's performance bond, Safeco has waived RPI's payment bond claim for its subcontract balance in the amount of $124,368 and the balance to complete of $92,061.

53.    A significant part of the settlement consideration to Tricore from Safeco involves the release and dismissal of all RPI claims against Tricore and the Tricore payment bond, with the exception of the claim against Safeco for bad faith.

54.    By correspondence dated December 5, 2003, Safeco originally denied RPI's payment claim and stated as follows:

"We understand that you dispute the termination and feel

15

you were terminated without cause and without being afforded the opportunity to repair or replace any allegedly deficient work. <u>However, the issues as to whether the termination was proper and whether or not your company is entitled to its remaining contract funds or Tricore can assess back charges can only be resolved by a court or arbitrator</u>". **(See attached Exhibit 14).** Emphasis added.

55.    Contrary to the above representation, Safeco resolved all issues against RPI and entered into an excessive and unconscionable settlement with Tricore to protect itself against the bad faith claims made by Tricore for Safeco's failure to perform in any respect its duties pursuant to RPI's performance bond.

56.    Safeco's utilization of contract RPI's balance and contract claims to settle Tricore's bad faith claims against Safeco represent unfair and/or deceptive acts in violation of M.G.L. c. 93A.

WHEREFORE, plaintiff, R.P. Iannuccillo & Sons Construction Co., demands that judgment be entered in its favor and against Safeco Insurance Company of America pursuant to M.G.L. c. 93A for damages, attorney's fees and treble damages.

Defendant/Crossclaim Plaintiff
**R.P. Iannuccillo & Sons Construction Co.**
By their Attorneys:


David M. Campbell, Esq. (BBO 645512)
**Visconti & Boren, Ltd.**
55 Dorrance Street
Providence, RI 02903
**Telephone:** 401/331-3800
**Facsimile:** 401/421-9302


David E. Wilson, Esquire (BBO 541968)
Corwin & Corwin LLP
One Washington Mall
Boston, MA 02108

16

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, do hereby certify that a copy of the foregoing has been furnished by U.S. Mail, postage prepaid, this _____ day of January, 2006, to:

Edward D. Kutchin, Esquire
Kerry R. Northup, Esquire
Kutchin & Rufo, P.C.
155 Federal Street
Boston, MA 02110

Bradford R. Carver, Esquire
Jonathan C. Burwood, Esquire
Hinshaw & Culbertson LLP
One International Place
Fort Hill Square, 3rd Floor
Boston, MA 02110

Dennis C. Cavanaugh, Esquire
Brown, Raysman, Millstein, Felder & Steiner
Cityplace II, 10th Floor
185 Asylum Street
Hartford, CT 06103

17