UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

TRICORE, INC.,
Plaintiff,

v.

SAFECO INSURANCE COMPANY OF AMERICA, and R.P. IANNUCCILLO & SONS CONSTRUCTION CO.,
Defendants.

CIVIL ACTION NO. 04-12393-JGD

PLAINTIFF'S OPPOSITION TO SAFECO INSURANCE COMPANY OF AMERICA'S MOTION TO ENFORCE SETTLEMENT AGREEMENT

Plaintiff, Tricore, Inc. ("Tricore") respectfully submits this opposition to Defendant Safeco Insurance Company of America's motion to enforce settlement agreement.

## I. INTRODUCTION AND FACTUAL BACKGROUND

### A. The Construction Project and Basis of this Proceeding

Tricore, a general contracting company, brought this action against a former subcontractor, R.P. Iannuccillo & Sons Construction Co. ("RPI"), asserting claims for breach of contract, breach of the covenant of good faith and fair dealing and violation of Mass. G.L. Ch. 93A for failure to provide construction work in a good and workmanlike manner and on a timely basis. Tricore is also asserting claims against Safeco Insurance Company of America for breach of contract, the covenant of good faith and fair dealing and violations of Mass. G.L. Ch. 93A and 176D in connection with Safeco's failure to honor a performance bond it issued in favor of Tricore for the work to be performed by RPI. In response, RPI asserted counterclaims against Tricore for breach of contract, quantum meruit and violation of Mass. G.L. Ch. 93A alleging that

it was unjustly terminated from the project and has sustained damages as a result. RPI is also asserting claims against Safeco as a result of Safeco's failure to honor a payment bond it issued in favor of RPI.

The claims arise out of a construction project (the "Project") for Sherrill House, Inc., which engaged Tricore to perform as the general contractor. As part of its duties as construction manager/general contractor, Tricore was responsible for coordinating all phases of the Project construction with the owner, the architect, and the various subcontractors that Tricore engaged to work on the Project. Tricore was also responsible for supervising the subcontractors and ensuring the completion of quality work in accordance with the Project timetables. Among the subcontractors engaged by Tricore was RPI, which executed a subcontract with Tricore on April 25, 2002 (the "Subcontract"). RPI was engaged as the principal concrete subcontractor, responsible for the forming and placement of all concrete foundations, slabs, and other concrete portions of the Project.

In connection with the Project, Safeco issued a performance bond in favor of Tricore, guaranteeing RPI's performance under the subcontract. Separately, Safeco also issued a payment bond in RPI's favor, guaranteeing payment by Tricore. As Tricore and RPI both filed claims against each other and their surety, Safeco was brought into this suit both in its capacity as RPI's performance bond surety ("Safeco(RPI)") and as Tricore's payment bond surety ("Safeco(Tricore)").

B. <u>The Settlement Conference and the Draft Settlement Agreement</u>

All of the parties in this action participated in a mediation with the Honorable Charles B. Swartwood III on July 19, 2005. At the mediation, Tricore sought to recover damages in excess

of $520,000. During the course of the mediation, it became clear that RPI was unwilling to participate in any reasonable accommodation as contemplated by Tricore, Safeco(RPI) and Safeco(Tricore), but rather was continuing to insist on recovery of damages despite overwhelming evidence of its numerous breaches of contract. Safeco(RPI) agreed, however, under the authority granted to it pursuant to the power of attorney provisions of its indemnity agreement with RPI, to dismiss RPI's counterclaim against Tricore in connection with any contemplated settlement. In addition, Safeco(RPI) would dismiss RPI's claims against Safeco(Tricore) with the exception of RPI's claims based on Chapters 93A and 176D of the Massachusetts General Laws (the "Remaining Claims"). Although the parties were aware that Safeco(RPI) could not dismiss RPI's bad faith claim against Safeco(Tricore), what remained outstanding was how Safeco and Tricore would handle the Remaining Claims going forward, and in particular the related attorneys' fees and costs. In short, the parties never agreed to a material provision of the required settlement – how to handle the one remaining claim and its associated costs, which Tricore understands currently equals approximately $30,000 in legal fees incurred.

Subsequently, counsel for Tricore circulated a draft Settlement Agreement that was designed to address that portion of the claim as to which the settlement related. The Settlement Agreement contained limited releases for each of the parties. The limited releases were the only logical choice not because of the "unfinished business with respect to any loss or costs incurred by Safeco(Tricore) as a result of RPI's surviving bad faith claim," but rather because Tricore is a large general contractor involved in numerous projects, and Safeco is a large construction bond surety. A general release would have been completely inappropriate under these circumstances since Safeco likely acts as surety on other projects in which Tricore is involved.

On August 4, 2005, a scant two weeks after the mediation conference, Tricore's attorney, Edward Kutchin, sent an email to Safeco(RPI) and Safeco(Tricore) indicating that Tricore would not accept Safeco(Tricore)'s request to tender the defense of Safeco to the Remaining Claim. *Exhibit A.* Tricore was unwilling to accept the tendered defense in light of its concerns that the escalating costs of the Remaining Claims was, and would continue, to erode the value of the settlement amount proferred for Tricore's claims. In other words, Tricore remained concerned about accepting a $300,000 settlement, representing a substantial deduction from the full value of its claims, where only a portion of the proceeding was resolved and Tricore had a continuing obligation under the terms of its general indemnity agreement with Safeco(Tricore) to pay for all costs including legal fees Safeco(Tricore) incurred in defending against RPI's Remaining Claims.

By email correspondence dated August 19, 2005, Safeco(RPI)'s counsel, Jonathan Burwood, affirmed his acknowledgement of Tricore's concern by stating that "[i]t's my understanding that the *open question* concerning Tricore's indemnity obligation to Safeco (the other Safeco) may be impacting our ability to wrap this up." *Exhibit B* (emphasis added). In that same email correspondence, Attorney Burwood, referencing RPI Attorney David Campbell, stated that he informed Attorney Campbell "that we have not yet reached a final agreement and that [Campbell's] negotiation of the agreement was inappropriate as his client elected not to participate." Tricore, Safeco(RPI) and Safeco(Tricore) continued to discuss the overall agreement in light of the Remaining Claim. On September 14, 2005, the parties appeared before the Court for a status conference to discuss the Remaining Claims. Contrary to Safeco(RPI)'s allegation, counsel for Tricore explained in detail the issue concerning his client's position as far as whether a settlement had been reached. Specifically, in response to a question posed by the

Court regarding the status of the consummation of the settlement, counsel for Tricore explained in detail that it was Tricore's position that a definitive settlement agreement had not been achieved and then explained to the Court the reasons for this position. In addition, on September 13, 2005, Attorney Burwood stated in an email to Attorney Campbell that "[p]lease note that the attached [draft of the Settlement Agreement] reflects a work in progress – therefore none of the parties are bound by any of the terms proposed." *Exhibit C.* Thereafter, beginning on October 11, 2005 and again on October 24, 2005, counsel for Safeco(RPI) and Tricore discussed Tricore's concern about the open-ended aspect of Tricore's obligation under the General Indemnity Agreement to reimburse Safeco for its costs and expenses to defend against the Remaining Claims and this position was reiterated in emails to counsel for Safeco(RPI) and Safeco(Tricore) on December 5, 2005 (*Exhibit D*) and December 7, 2005 (*Exhibit E*). Therefore, contrary to their allegations, Safeco(Tricore)'s counsel was undeniably aware that there was no meeting of the minds no later than September of 2005.

## II. <u>ARGUMENT</u>

The documentary evidence makes it perfectly clear that although Tricore and Safeco have been close to a settlement, they have failed to reach a meeting of the minds with respect to all material issues required to resolve their dispute, and therefore, no enforceable settlement agreement was ever reached. It is axiomatic that an enforceable agreement of any kind requires an agreement as to all material terms, and that the parties have moved beyond "imperfect negotiations." *Lafayette Place Assoc. v. Boston Redevelopment Auth.*, 427 Mass. 509, 517 (1998). This requirement extends to settlement agreements as well. *Olin Aegis v. Finnegan,* 2002 WL 225924 (D.Mass. 2002).

There is a "strong inference" under Massachusetts law that where the parties have agreed to execute a written agreement, the transaction remains open until the agreement is signed. *Id.* (citing *Goran v. Royal Investments, Inc.*, 516 N.E.2d 173, 175 (Mass.App.Ct. 1987). The Restatement (Second) of Contracts notes that the following factors are relevant in determining whether an agreement has been formed even though it has not been memorialized in writing: (a) the extent to which express agreement has been reached with respect to all terms to be included, (b) whether the contract is of the type normally put into writing, (c) whether a formal writing is required for its full expression, (d) whether the amount is large or small, (e) whether it is a common or unusual contract, (f) whether it has few or many details, (g) whether a standard form of contract is used in similar transactions, and (h) whether either party has taken any action in preparation for performance during the negotiations. Restatement (Second) of Contracts, § 27 (comments thereto). Conversely, where evidence of an oral agreement exists and the written agreement is largely a formality, then a binding contract is likely to found. *Olin Aegis*, at *2. An analysis of the facts set forth above clearly indicates that the parties had not yet reached a final, binding agreement with respect to the terms of their settlement. Although the parties left the mediation having a basic agreement with respect to the primary dispute in the case, the bad faith counterclaim by RPI against Safeco, and the associated indemnity costs, *remained at issue*. Safeco(Tricore)'s attempt to tender the defense of this claim to Tricore was rejected a few weeks after the mediation conference, and less than a month after the mediation session, Safeco(RPI) acknowledged the existence of this issue in stating that "[i]t's my understanding that the *open question* concerning Tricore's indemnity obligation to Safeco (the other Safeco) may be impacting our ability to wrap this up." Safeco(RPI)'s counsel further exemplified his own understanding that an executed agreement was necessary to bind the parties to the proposed

settlement when he noted to Attorney Campbell that "the attached [draft of the Settlement Agreement] reflects a work in progress – therefore none of the parties are bound by any of the terms proposed." Safeco(RPI)'s own counsel clearly exemplifies the parties' need to resolve this final, material issue before a settlement would be valid and binding upon them. Thereafter, beginning on October 11, 2005 and again on October 24, 2005, counsel for Safeco(RPI) and Tricore discussed Tricore's concern about the open-ended aspect of Tricore's obligation under the General Indemnity Agreement to reimburse Safeco for its costs and expenses to defend against the Remaining Claims. Tricore's position was fully explained to the Court at the status conference held on September 14, 2005, and was reiterated in emails to counsel for Safeco(RPI) and Safeco(Tricore) on December 5, 2005 (*Exhibit D*) and December 7, 2005 (*Exhibit E*). As counsel for Tricore explained to them, the only way that Tricore would in good faith consummate a final settlement with Safeco(RPI) was if Safeco(RPI) would waive its entitlement to receive reimbursement for expenses incurred in connection with its defense against the Remaining Claims. Otherwise, Safeco(RPI) would limiting its exposure relative to the lawsuit filed by Tricore while on the other hand Tricore's obligations to reimburse Safeco(RPI) for its cost of defense against the Remaining Claims would continue to accelerate until they were either settled or brought to trial. This contingency significantly reduced the value of the settlement that Tricore was originally willing to accept.

Tricore's counsel also reiterated the substance of the conversation held between Tricore's President, Paul Jacobson, and Patricia A. Catanese, Safeco's Contract Manager, relative to their mutual understanding of what was agreed to between Tricore and Safeco(RPI) in its capacity as Tricore's bonding company. Specifically, it was their joint understanding that Tricore would not be responsible for any costs incurred by Safeco(RPI) to defend against the Remaining Claims

asserted by RPI if: 1) the Remaining Claims were settled with RPI; 2) RPI voluntarily dismissed the Remaining Claims against Safeco(RPI); or 3) the Court dismissed the Remaining Claims asserted by RPI. Their mutual understanding was that the only way that Tricore would be responsible for reimbursing Safeco for any costs and expenses incurred to defend against the Remaining Claims was if a final judgment was entered against Safeco(RPI) asserting that Safeco(RPI) failed and refused to conduct a reasonable investigation of RPI's claim and failed to effectuate a prompt and fair settlement of RPI's claim, thereby violating Chapters 93A and 176D. In essence, for RPI to succeed on its claim, Safeco(RPI) would have needed to summarily dismissed RPI's claim against Tricore's payment bond without having first conducted a reasonable investigation. It was believed by all parties that this was clearly not true.

The factors set forth in the Restatement (Second) of Contracts also militate against a finding of a binding settlement agreement. An agreement had clearly not been reached with regard to all matters to be included in the agreement. Although the draft settlement agreement circulated by Attorney Kutchin included a "carve out" from the release for outstanding claims involving Tricore's indemnity obligation, this was little more than a place-holder included in the *draft* of the agreement, subject to further discussion between the parties. Settlement agreements are almost invariably reduced to writing, and a formal writing is clearly required to fully express the complicated terms of a partial settlement such as this. One is hard-pressed to imagine that a $300,000 settlement amount with respect to claims in excess of $520,000 do not constitute a "large" amount at issue, and no parties took any action in preparation for performance of the settlement agreement during the negotiation thereof. Simply stated, the factors listed in the Restatement (Second) of Contracts uniformly indicate that a finding of an enforceable settlement in this instance is inappropriate.

Contrary to Safeco(RPI)'s claims, Tricore's unwillingness to execute the settlement agreement constitute neither a "change of heart" nor "Monday morning quarterbacking" in which a party to a settlement subsequently regrets the decisions reached at settlement. Rather, as clearly evidenced by the documentary evidence, and as clearly acknowledged by counsel for Safeco(RPI), the handling of the Remaining Claim and Tricore's ongoing indemnification obligation in connection with such claim has consistently constituted a material item upon which the parties have failed to reach agreement.

## III. CONCLUSION

For the reasons set forth above, Tricore respectfully requests that Safeco(RPI)'s motion to enforce settlement be DENIED. Quite simply, the parties never achieved a meeting of the minds with respect to all material terms required for an oral agreement. Further, as noted by the Restatement (Second) of Contracts, and as further acknowledged by Safeco(RPI)'s counsel, all parties clearly expected and required that the agreement (assuming *arguendo* one even existed) would need to be reduced to writing before becoming enforceable.

The Plaintiff,
Tricore, Inc.,
By its attorneys,

/s/ Edward D. Kutchin
Edward D. Kutchin, Esq.
BBO No. 281920
Kerry R. Northup, Esq.
BBO No. 633016
Kutchin & Rufo, P.C.
155 Federal Street
Boston, MA 02110
(617) 542-3000

CERTIFICATE OF SERVICE

I hereby certify that I have served the within document, by mailing a copy thereof, postage prepaid, to:

David M. Campbell, Esq.
Visconti & Boren, Ltd.
55 Dorrance Street
Providence, RI 02903

Bradford R. Carver, Esq.
Cetrulo & Capone LLP
Two Seaport Lane
Boston, MA 02110.

Dennis R. Cavanaugh, Esq.
Brown, Raysman, Millsterin, Felder & Steiner
Cityplace II, 10th Floor
185 Asylum Street
Hartford, CT 06103

/s/ Kerry R. Northup
Kerry R. Northup

Dated: January 26, 2006

F:\Files\4229\Pleadings\Opposition_Settlement Enforcement.doc

EXHIBIT A

**Edward D. Kutchin**

**From:** Edward D. Kutchin [ekutchin@kutchinrufo.com]
**Sent:** Thursday, August 04, 2005 1:03 PM
**To:** Dennis Cavanaugh; Jonathan Burwood; Bradford R. Carver
**Cc:** Paul Jacobson; Kerry Northup
**Subject:** Settlement Agreement-Tricore/RPI

Settlement Agmt_v01.doc

Gentlemen,

I am attaching a copy of the proposed Settlement Agreement relative to the lawsuit between Tricore, RPI and Safeco. Please review the document and then contact me with any questions or comments you have. I left voice messages for the three of you to inform you that Tricore is not interested in accepting the proposed tendering of the defense of Safeco in the cross claim action brought by RPI. Rather, we believe it is far better for Dennis to continue to represent Safeco and then when Dennis finally gets rid of the action Safeco has its rights under the General Indemnity Agreement. I hope we can resolve this part of the case very shortly. I will look forward to hearing from you shortly.

Ed

Edward D. Kutchin, Esq.
Kutchin & Rufo, P.C.
155 Federal Street, 17th Floor
Boston, MA 02110-1727
Tel: (617) 542-3000
Fax: (617) 542-3001
E-mail: ekutchin@kutchinrufo.com

**Edward D. Kutchin**

EXHIBIT B

**From:** Jonathan C. Burwood [JBurwood@hinshawlaw.com]
**Sent:** Friday, August 19, 2005 2:25 PM
**To:** ekutchin@kutchinrufo.com
**Cc:** Bradford R. Carver
**Subject:** Re: FW: Settlement Agreement-Tricore/RPI

Ed:

I got your message this morning. After we talked last Friday, I met with Brad and we discussed the draft Settlement Agreement and consulted with our client. It's my understanding that the open question concerning Tricore's indemnity obligation to Safeco (the other Safeco) may be impacting our ability to wrap this up. Have you and Dennis made any headway on that issue? Nonetheless, Brad has been on vacation all week. As such, I do not have his input for the redline version I promised to you. I understand you are anxious to move this forward, particularly if you are going to be out the next two weeks. Unfortunately, I'm not in a position to get you our edits until I have Brad's input. I will follow-up with Brad and make every effort to have a redline version to you shortly. For the record, I don't believe we've had the draft agreement for over a month as you noted, I believe you forwarded the draft to our attention on or about August 4, 2005. In any event, I understand your concern and will get you our proposed edits as quickly as possible.

As for David Campbell, I returned his call on Wednesday and left him a voicemail. He's since called me back but we have not spoken. Among other things, David was looking for a copy of the settlement agreement and associated correspondence. I informed him that we have not yet reached a final agreement, and that his participation in the negotiation of the agreement was inappropriate as his client elected not to participate. I offered to send him a copy the final agreement. Please let me know if you feel differently on that point.

Thank you.

Jonathan C. Burwood
Hinshaw & Culbertson LLP
One International Place, 3rd Floor
Boston, MA 02110
(617) 213-7009 (direct dial)
(617) 213-7001 (fax)

**"Edward D. Kutchin" <ekutchin@kutchinrufo.com>**

08/19/2005 12:15 PM

Please respond to <ekutchin@kutchinrufo.com>

To "Jonathan C. Burwood" <JBurwood@hinshawlaw.com>
cc
Subject FW: Settlement Agreement-Tricore/RPI

Edward D. Kutchin, Esq.
Kutchin & Rufo, P.C.

**Edward D. Kutchin**

EXHIBIT C

-----Original Message-----
**From:** Jonathan C. Burwood [mailto:JBurwood@hinshawlaw.com]
**Sent:** Tuesday, September 13, 2005 1:05 PM
**To:** David Campbell
**Subject:** Tricore/Sherrill House

David:

Pursuant to your request, attached please find a redline draft of the Tricore Settlement Agreement. The attached is the most recent draft and reflects our recommendations to the original draft prepared by counsel for Tricore. Please note that the attached reflects a work in progress - therefore none of the parties are bound by any of the terms proposed. Please review the attached and contact me with any questions or concerns.

Thank you.

Jonathan C. Burwood
Hinshaw & Culbertson LLP
One International Place, 3rd Floor
Boston, MA 02110
(617) 213-7009 (direct dial)
(617) 213-7001 (fax)

Hinshaw & Culbertson LLP is an Illinois registered limited liability partnership that has elected to be governed by the Illinois Uniform Partnership Act (1997).

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.

**Edward D. Kutchin**

EXHIBIT D

**From:** Edward D. Kutchin [ekutchin@kutchinrufo.com]
**Sent:** Monday, December 05, 2005 3:37 PM
**To:** DCavanaugh@brownraysman.com; Jonathan C. Burwood
**Cc:** Paul Jacobson; knorthup@kutchinrufo.com; Bradford R. Carver; kiraus@SAFECO.com; IRASUS@SAFECO.com
**Subject:** RE: Tricore v. Safeco, et al.

Dear Jon:

I am in receipt of your email and attached redlined Settlement Agreement and wish to respond. First and foremost, I am sorry that after all that has gone on in this case and our excellent relationship, your client apparently has forced you to draw a line in the sand and demand that we execute the Settlement Agreement on or before December 9, 2005. It is important to remember the specific reason why my client Tricore, Inc. ("Tricore") has consistently stated that the settlement of the lawsuit was contingent upon a complete dismissal of all claims and counterclaims in the lawsuit by all parties and an exchange of general releases by all parties relating to the lawsuit. As I have continually told both you and Dennis Cavanaugh on numerous occasions and also explained to Judge Dein on September 14, when the settlement was reached between Safeco and Tricore at the end of the mediation held before Judge Swartwood on July 19, 2005, it was agreed by Safeco Insurance Company of America ("Safeco") on behalf of itself and on behalf of .P. Iannuccillo and Sons Construction Co., Inc. ("RPI") that Tricore would receive payment of $300,000, a total release from both Safeco and RPI relative to the subject project and its obligations to Safeco under its general indemnity agreement and that the entire lawsuit would be dismissed. It was also agreed that Tricore would release both Safeco and RPI in the lawsuit.

However, counsel for all parties realized after the settlement was agreed upon that Safeco did not have the authority to dismiss RPI's bad faith settlement of claim practices counterclaim ("Bad Faith Claim") against Safeco and therefore the entire lawsuit could not be dismissed and the basic premise for which the settlement had been agreed upon could not be effectuated. This is the sole reason why Tricore has continually informed both you and Dennis Cavanaugh that based upon the change in the underlying premise for the original settlement, the only way that Tricore could now in good faith consummate a settlement with Safeco was if Safeco would waive its entitlement to receive reimbursement for legal fees incurred in connection with its defense of RPI's Bad Faith Claim. Otherwise, as I have explained on numerous occasions, Safeco will be able to limit its exposure relative to the claims filed by Tricore in the lawsuit while on the other hand Tricore's obligation to reimburse Safeco for its cost of defense of the Bad Faith Claim will continue to accelerate until the Bad Faith Claim is either settled or tried. This contingency significantly reduces the value of the settlement that Tricore had originally accepted. In view of the foregoing, I will again restate the position that Tricore has consistently taken once all of the parties realized that Safeco did not have the authority to dismiss RPI's Bad Faith Claim, that is unless Safeco was willing to agree to waive reimbursement for its cost of defense of the Bad Faith Claim under the terms of its general indemnity with Tricore, Tricore was not in a position to execute the modified settlement agreement. I respectfully request that in the event you file any type of motion to enforce the settlement, a copy of this email be referenced in and attached to the motion.

Thank you,

Edward D. Kutchin, Esq.
Kutchin & Rufo, P.C.
155 Federal Street, 17th Floor
Boston, MA 02110-1727
Tel: (617) 542-3000
Fax: (617) 542-3001
E-mail: ekutchin@kutchinrufo.com

**Edward D. Kutchin**

EXHIBIT E

**From:** Edward D. Kutchin [ekutchin@kutchinrufo.com]
**Sent:** Wednesday, December 07, 2005 8:22 AM
**To:** Cavanaugh, Dennis C.; Jonathan C. Burwood
**Cc:** Paul Jacobson; knorthup@kutchinrufo.com; Bradford R. Carver; kiraus@SAFECO.com; IRASUS@SAFECO.com
**Subject:** RE: Tricore v. Safeco, et al.

Dear Jon and Dennis:

I am in receipt of Dennis' detailed response to my email and do not want to devolve into a letter writing campaign. However, suffice it to say that I do not agree with Dennis' recitation of the facts. However, notwithstanding that fact, my client had a long conversation yesterday with Patty Catanese regarding this whole situation and I will explain what their joint understanding was of the arrangement agreed to between Safeco and Tricore as it relates to Tricore's obligations under the General Agreement of Indemnity for Contractors ("Indemnity Agreement").

Before I address what their mutual understanding was, the genesis of this entire misunderstanding between Safeco and Tricore relates to Tricore's obligations to Safeco under the portion of the Indemnity Agreement entitled "Indemnity to Surety". My reading of Section 1 of this provision would not, I suggest, obligate Tricore to reimburse Safeco for its costs and expenses to defend the bad faith claim asserted by RPI in the lawsuit ("Bad Faith Claim") until and unless it was deemed that Safeco incurred these expenses "by reason of having executed any bond or incurred by Safeco on account of any default under the Indemnity Agreement by Tricore." Therefore, I would suggest that Safeco's defense of the Bad Faith Claim would not come within the provisions of this section.

However, notwithstanding the foregoing, I would like to relate to you both the substance of the conversation held between Paul Jacobson's and Patty Catanese relative to their mutual understanding of what was agreed to between Tricore and Safeco in its capacity as Tricore's bonding company. Specifically, it was their joint understanding that Tricore would not be responsible for any costs incurred by Safeco to defend against the Bad Faith Claim asserted by RPI if: 1) the claim was settled with RPI; 2) RPI voluntarily dismissed the Bad Faith Claim against Safeco; or 3) the Court dismissed the Bad Faith Claim asserted by RPI. Their mutual understanding was that the only way that Tricore would be responsible for reimbursing Safeco for any costs and expenses incurred to defend the Bad Faith Claim asserted by RPI was if a final judgment was entered against Safeco asserting that Safeco failed and refused to conduct a reasonable investigation of RPI's claim and failed to effectuate a prompt and fair settlement of RPI's claim thereby violating Chapter 93A and Chapter 176D. In essence, for RPI to succeed on its claim, Safeco would have hac to have summarily dismissed RPI's claim against Tricore's payment bond without having first conducted a reasonable investigation. We all know that is clearly not the case.

In view of the foregoing, I would strongly suggest that both of you contact Patty to discuss her understanding of what transpired at the settlement conference. Assuming that the two of you can agree with Patty's understanding, then we would like tc modify the Settlement Agreement accordingly and move forward to effectuate the settlement as soon as possible. It has always been Tricore's intention to resolve its outstanding issues with Safeco and work cooperatively in the future in order to defeat RPI's frivolous claims. I will look forward to hearing back from you.

Very truly yours,
Ed

Edward D. Kutchin, Esq.
Kutchin & Rufo, P.C.
155 Federal Street, 17th Floor
Boston, MA 02110-1727
Tel: (617) 542-3000
Fax: (617) 542-3001
E-mail: ekutchin@kutchinrufo.com