UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRICORE, INC. | : CIVIL ACTION NO.<br>: 04-12393 (JGD) |
| VS. | : |
| SAFECO INSURANCE COMPANY OF<br>AMERICA and R.P. IANNUCCILLO &<br>SONS CONSTRUCTION CO. | :<br>:<br>: February 21, 2006 |

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
AMEND COMPLAINT FILED BY DEFENDANT/CROSS CLAIM
PLAINTIFF, R.P. IANNUCCILO & SONS CONSTRUCTION CO.**

Pursuant to Rule 16(b) of the Federal Rules of Civil Procedure and Rule 7.1 of the Local Rules of the United States District Court for the District of Massachusetts (the "Local Rules"), the Cross-claim Defendant, Safeco Insurance Company of America ("Safeco" or "Surety")[1] respectfully submits this Memorandum of Law in Opposition to the Motion to Amend filed by the Cross-claim Plaintiff in this matter, R. P. Iannuccillo & Sons Construction Co. ("RPI").

**I.   INTRODUCTION**

With complete disregard for the Federal Rules of Civil Procedure, the Scheduling Orders entered in this case by the Court (Dien, J.) on May 3, 2005 and September 15, 2005, (collectively the "Scheduling Orders"), and the motion practice requirements contained in

---

[1] Safeco Insurance Company of America issued a performance bond on behalf of RPI ("RPI Performance Bond") and a payment bond on behalf of Tricore Inc. ("Tricore Payment Bond"), which were both related to the Sherrill House-Frank Wood Expansion Project (the "Project"). On February 2, 2006, Safeco Insurance Company of America filed an Opposition Memorandum to RPI's Motion to Amend Cross-Claim("Motion to Amend") regarding the RPI Performance Bond. In that Memorandum, Safeco Insurance Company of America referred to itself as "Safeco RPI." The undersigned now submits this Opposition Memorandum regarding the Tricore Payment Bond.

Local Rule 7.1, RPI attempts to remake its Massachusetts General Law Chapter 93A ("Chapter 93A") Cross-Claim ("Count II") against Tricore's Payment Bond Surety.[2] In its proposed amendment, RPI attempts to "pile on" to the allegations contained in Count II by claming that Safeco in handling its Performance Bond *also* violated Chapter 93A.

RPI's Motion must be denied. Pursuant to the Scheduling Orders, fact witness discovery has closed and briefing and argument on the Surety's Motion for Summary Judgment regarding Count II are complete.[3] Moreover, all other claims, counterclaims, and crossclaims related to this multi-party litigation were settled after the July 2005 mediation with Judge Swartwood.

As such, RPI cannot put forth any valid reason for its neglect and delay in seeking an amendment at this late stage of the litigation.[4] Indeed, RPI has not argued, and cannot argue, that "good cause" exists to allow the amendment at this late stage of the litigation.

Moreover, Safeco will be unduly prejudiced if RPI is allowed to set the clock back on this litigation because it will be required to incur needless expense, burden and vexation.

Additionally, RPI's Motion to Amend must be denied because it has failed to comply with the requirements of Local Rule 7.1(a)(2) by not conferring with Safeco regarding the relief sought in its Motion and Local Rule 7.1(b)(1) by not submitting a memorandum of law in support of its Motion.

---

[2] Count II of the Crossclaim relates to the Safeco's alleged unfair settlement practices regarding the claim RPI made on Tricore's payment bond, which was issued by Safeco.

[3] Notably, counsel for RPI sent a letter on the eve of oral argument on Safeco's Motion for Summary Judgment requesting that the hearing be adjourned until such time as the Court took up the Motion to Amend. RPI's request for an adjournment was denied by the Court. The hearing on the Summary Judgment Motion is now complete.

[4] The first mention of consideration of an amendment of the pleadings was during a Status Conference these alleged claims was during a status conference held before the Court on January 4, 2006.

Accordingly, Safeco respectfully requests that RPI's Motion to Amend be denied.

## II.  PROCEDURAL BACKGROUND

On or about November 12, 2004, Tricore filed a Six-Count Complaint against RPI and the Surety. RPI's claims against the Surety were limited to its conduct as the issuer of Tricore Payment Bond. Tricore sought damages from RPI for breach of the Subcontract, for alleged violations Chapter 93A, and for breach of the covenant of good faith and fair dealing. See Tricore Complaint, Counts V through VII.

In response, RPI counterclaimed against Tricore for Tricore's alleged breach of the Subcontract, Quantum Meruit, and for alleged violations of Chapter 93A. See RPI's Answer, Counterclaim, and Crossclaim.

RPI also asserted a Cross-claim against the Surety, which was amended along with its Answer and Counterclaim on May 5, 2005.[5] The Cross-Claim vaguely attempts to assert causes of action against the Surety for payment under the Tricore Payment Bond and for violations of Chapters 93A and 176D (Count II). See id.; see also RPI's Amended Answer, Counterclaim, and Crossclaim.

Regarding Count II, RPI alleges in conclusory fashion that the Surety "failed and refused to conduct a reasonable, independent investigation [of RPI's Payment Bond claim]; failed to effectuate the prompt and fair settlement of [RPI's Payment Bond claim]; and refus[ed] to acknowledge any liability and asserting defenses with no basis in law or fact." See Amended Answer, Counterclaim, and Crossclaim at Crossclaim Count II, ¶¶ 5-6. RPI alleges that the Surety's ill defined conduct represents "unfair settlement practices in

---

[5] The May 5, 2005 amendment did not modify or alter the allegations against Safeco.

violation of Chapter 176D and unfair and/or deceptive acts in violation of Chapter 93A." Id. at ¶ 8.

Until the proposed amendment, RPI *had not* asserted any claim in any pleading during the fourteen (14) months of this case regarding the alleged bad faith conduct on the part of Safeco regarding the RPI Performance Bond. See generally id.

The Honorable Charles B. Swartwood, United States Magistrate Judge, presided over a mediation of this matter on July 19, 2005. All but Count II against the Surety were resolved at the mediation.

On or about September 14, 2005, the parties appeared before the Court for a Status Conference. During the Status Conference, the parties spent considerable time discussing with the Court the Settlement, and the survival of Count II. On or about September 15, 2005, the Court ordered RPI to "inform all parties in writing, of its intention to pursue [Count II] against Safeco alleging bad faith" in connection with the Tricore Payment Bond by October 7, 2005. The Court also ordered that summary judgment motions regarding Count II be filed by November 7, 2005.

The only information ever provided by RPI regarding Count II was that RPI would not dismiss the same voluntary. On or about November 4, 2005, Safeco filed its Motion for Summary Judgment. On December 15, 2005, RPI filed its Memorandum in Opposition to Motion for Summary Judgment. The Surety's reply was filed January 13, 2006. The Court scheduled oral argument on the Summary Judgment Motion on January 24, 2006.

On January 18, 2006, counsel for RPI filed a letter requesting that the hearing on the Surety's Summary Judgment Motion be continued until such time as the Court ruled on RPI's Motion to Amend. On January 19, 2006, the Surety filed a letter objecting to RPI's attempts

4

to delay the hearing on the Summary Judgment Motion. Also on January 19, 2006, RPI filed its Motion to Amend, along with the proposed Amended Cross-Claim. The hearing on the Surety's Summary Judgment Motion was held on January 24, 2006.

Inasmuch as RPI has failed to establish that good cause exists to allow an amendment to their Cross-Claim, and because the Surety would be unduly prejudiced if the amendment were granted, the Surety respectfully requests that Court deny RPI's Motion to Amend.

### III. ARGUMENT

#### A. STANDARD OF REVIEW

Generally, Rule 15(b) of the Federal Rules of Civil Procedure provides the legal standard when leave is sought to amend a pleading. See Fed.R.Civ.P. 15(b); Resolution Trust Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994)); Berwind Prop. Group Inc. v. Newton Investors Ltd. P'ship, No. 04-11411-NMG, 2005 WL 3406509, at *5 (D. Mass. Dec. 5, 2005)(attached as Exhibit A)

However, the more stringent "good cause" standard found in Rule 16(b) of the Federal Rules of Civil Procedure must be employed, where, as here, a scheduling order is in place. See O'Connell v. Hyatt Hotels, 357 F.3d 152, 155-56 (1st Cir. 2004); see also Berwind, 2005 WL 3406509, *5 (holding that because scheduling order was in place, the court reviewed plaintiff's motion to amend under the "good cause" standard.).

The "good cause" standard emphasizes the diligence of the party seeking the amendment. See O'Connell, 357 F.3d at 156. "Indifference by the moving party seals off this avenue of relief...because such conduct is incompatible with the showing of diligence necessary to establish good cause." Id.

> The purpose of limiting the period for amending the pleadings is to assure that at some point both the parties and the pleadings will be fixed. The Rule does recognize, however, that the parties will occasionally be unable to meet these deadlines because scheduling order deadlines are established relatively early in the litigation. Therefore the Court may extend the scheduling order deadline on a showing of good cause if the deadline cannot reasonably be met despite the diligence of the party seeking the extension.

Id. (internal citations and quotations omitted).

Thus, Rule 16 provides the Court with the devices necessary to manage its docket and emphasizes the diligence of the party seeking amendment. Id. "[W]here considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has the burden of showing some valid reason for his neglect and delay" in seeking an amendment. Hayes v. New England Millwork Distribs., Inc., 602 F.2d 15, 19-20 (1st Cir. 1979).

### B. RPI HAS FAILED TO PUT FORTH ANY VALID REASON FOR THE NEGLECT AND DELAY IN FILING THE MOTION TO AMEND

Pursuant to the Scheduling Orders, fact witness discovery has closed and briefing and argument on the Surety's Motion for Summary Judgment regarding the sole remaining count (Count II) in this litigation are complete. Nevertheless, RPI believes it is entitled to amend Count II by introducing a new theory of recovery against the Surety under Chapter 93A without providing the Court any reason—let alone a valid reason—for its neglect and delay in moving to amend Count II.

To be sure, RPI concedes in its Motion that it was aware of the alleged conduct of Safeco regarding the RPI Performance Bond as early as October 14, 2004. See Motion to Amend, ¶ 13 ("RPI first gave notice to Safeco[(RPI)] regarding Safeco's bad faith failure

to comply with its performance obligations by letter dated October 14, 2004."). Yet, RPI has failed to explain why it waited almost twelve months and until after critical deadlines passed before it saw fit to move to amend its Cross-Claim. Indeed, by its own admission, RPI could have included the alleged claims regarding the RPI Performance Bond in Count II at the time if filed the Cross-claim.

In a case similar to the one at bar, the Court (Gorton, J.) in Berwind refused to grant the plaintiff's motion to amend the complaint under Rule 16 of the Federal Rules of Civil Procedure. See Berwind, 2005 WL 3406509. In Berwind, the plaintiff made a request to amend the complaint to join two parties to the action; however, the motion to amend was made after depositions were taken of those parties, and after the discovery deadline passed. Id.

> This Court is unaware of any such valid reason [for the plaintiff's neglect and delay in filing a motion to amend]. The identities of [the proposed defendants] have been known to the plaintiffs since the filing of the complaint…The propriety of adding two new defendants did not just become obvious nor were plaintiffs prevented from naming them as individual defendants at the initial filing of the complaint.

Id., *5; see also Grant v. News Group, 55 F.3d 1, 6 (1st Cir. 1995) (affirming the district court's denial of a motion to amend that had been submitted 14 months after the filing of the initial complaint and after close of discovery).

Similarly, RPI's own indifference and neglect in waiting until January 19, 2006, more than a year after it filed its initial Answer, to file the instant motion must seal off its right to seek such amendment pursuant to Rule 16 of the Federal Rules of Civil Procedure at this time. See O'Connell, 357 F.3d at 156.

### C. RPI IS NOT ENTITLED TO AMEND ITS PLEADING UNDER THE LESS STRINGENT STANDARD FOUND IN RULE 15 OF THE FEDRAL RULES OF CIVIL PROCEDURE

Even if the court applies the less stringent standard contained in Rule 15(a) of the Federal Rules of Civil Procedure, RPI's Motion to Amend must nevertheless be denied.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). "Even so, an amendment need not be granted in the face of 'undue delay, bad faith or dilatory motive on the part of the movant… undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Espinosa v. Sisters of Providence Health System 227 F.R.D. 24, 26 (D.Mass. 2005). Moreover, where "considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has the burden of showing some valid reason for his neglect and delay." Id. (citing Acosta-Mestre v. Hilton Int'l of Puerto Rico, Inc., 156 F.3d 49, 52 (1st Cir.1998); see also Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1178 n. 1 (1st Cir.1995) (Rule 15(a)"frowns upon undue delay in the amendment of pleadings, particularly if no legitimate justification is forthcoming.").

RPI has allowed a full year to elapse before seeking to amend Count II; however, it has not provided any explanation for its neglect and delay. It is plain that during this time RPI's awareness of purported facts which allegedly support its proposed amended Chapter 93A claim against its Performance Bond Surety did not change. See Motion to Amend, ¶ 13. Yet, RPI sat on its rights. Over the last twelve months, the parties participated in a global settlement before Judge Swartwood and engaged in a concerted

effort to establish a procedure for resolving Count II, which culminating in the September 15, 2005 Scheduling Order. During this same period, RPI had not sought to amend its Cross-Claim. According to that procedure, the Surety filed the Summary Judgment Motion, which now has been fully brief, argued and remains pending before the Court.

It is likewise clear that Safeco will be unduly prejudiced if RPI is allowed to set the clock back on this litigation. Fact witness discovery deadlines will need to be reset and the Surety will be required to expend a considerable amount of time, money and effort investigating and evaluating the factual bases for RPI's claims, after already devoting sizable resources to fully briefing and arguing the Summary Judgment Motion on the now pending version of RPI's Chapter 93A Claim.

RPI's unexplained and neglectful delay and the Surety's undue prejudice form the requisite basis to deny the Motion to Amend.

### D. RPI IS NOT ENTITLED TO RELIEF UNDER RULE 15(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE

RPI has moved to amend its Cross-Claim under Rule 15(b) of the Federal Rules of Civil Procedure.[6] See Motion to Amend, Introduction. "When an issue not embraced by the pleadings is tried with the express or implied consent of the parties, Rule 15(b) permits a party to amend the pleadings to reflect the case as it was actually litigated. Such an amendment can be allowed at any time, even after judgment." Data General Corp. v. Grumman Systems Support Corp., 825 F.Supp. 340, 344 (D.Mass 1993); see also

---

[6] In addition to moving under the wrong Federal Rule, RPI's Motion should also be denied because it has failed to comply with the requirements of Local Rule 7.1(a)(2) by not conferring with Safeco regarding the relief sought in its Motion and Local Rule 7.1(b)(1) by not submitting a memorandum of law in support of its Motion.

9

Fed.R.Civ.P. 15(b) "This rule is applicable, however, only where it is clear that the 'issue was not raised in the pleadings and not preserved in the pretrial order [and] has in fact been tried....'" Federal Deposit Ins. Corp. v. Ramirez-Rivera, 869 F.2d 624, 626-27 (1st Cir 1989)(citing Systems, Inc. v. Brige Electronics Co., 335 F.2d 465, 466-67 (3d Cir.1964)).

Thus, Rule 15(b) of the Federal Rules of Civil Procedure is inapposite. This matter has not been tried and in any event the Surety has not impliedly or expressly consented to the litigation of RPI's *new* Chapter 93A claims. For these reasons, as well, RPI's Motion to Amend must be denied.

## IV. CONCLUSION

For the foregoing reasons, Safeco respectfully requests that the Court deny RPI's Motion to Amend. Specifically, RPI cannot put forth any valid reason for the neglect and delay in seeking an amendment at this late stage of the litigation. Pursuant to the Scheduling Orders, fact witness discovery has closed and briefing and argument on the Surety's Motion for Summary Judgment regarding Count II are complete. Moreover, all other claims, counterclaims, and crossclaims related to this multi-party litigation were settled after the July 2005 mediation with Judge Swartwood.

Likewise, RPI has not argued, and cannot argue, that that "good cause" exists to allow the amendment at this late stage of the litigation. To be sure, RPI's indifference in waiting more than a year to amend its Cross-Claim, notwithstanding its admission that it has known of the alleged claims against its Performance Bond Surety since at least October 2004, is incompatible with the showing of diligence necessary to establish good cause

Moreover, RPI's Motion should be denied because the Surety will be unduly prejudiced if RPI is allowed to set the clock back on this litigation, including but not limited to having to incur needless expense, burden and vexation.

Accordingly, Safeco respectfully requests that RPI's Motion to Amend be denied.

                                CROSSCLAIM DEFENDANT,
                                SAFECO INSURANCE COMPANY
                                OF AMERICA

By /s/ Dennis C. Cavanaugh
                Dennis C. Cavanaugh (BBO # 639556)
                Patrick M. Birney (Admitted in CT only)
                Brown Raysman Millstein Felder
                    & Steiner LLP
                185 Asylum Street
                Hartford, CT 06103
                860-275-6457
                Its Attorneys

## CERTIFICATION

This is to certify that on February 21, 2006, a copy of the foregoing was mailed, postage pre-paid or delivered electronically or by facsimile to the following:

| | |
|---|---|
| Edward Kutchin<br>Kerry R. Northup<br>Kutchin & Rufo, PC<br>155 Federal Street, 17th Floor<br>Boston, MA 02110-1727<br>**Tricore, Inc.** | David M. Campbell<br>Visconti & Boren, LTD<br>55 Dorrance Street<br>Providence, RI 02903<br>**R. P. Iannuccillo & Sons Construction Co** |

Bradford R. Carver, Esq.
Jonathan C. Burwood, Esq.
Hinshaw & Culbertson, LLP
One International Place, 3rd Floor
Boston, MA 02110
**Safeco Insurance Company of America**

_____
Dennis C. Cavanaugh

EXHIBIT A

Westlaw.

233 F.R.D. 62 Page 1
233 F.R.D. 62, 2005 WL 3406509 (D.Mass.)
(Cite as: 233 F.R.D. 62, 2005 WL 3406509 (D.Mass.))

**Motions, Pleadings and Filings**

United States District Court,
D. Massachusetts.
BERWIND PROPERTY GROUP INC. and Newton
Investors Limited Partnership,
Plaintiffs,
v.
ENVIRONMENTAL MANAGEMENT GROUP,
INC., Defendant.
**No. CIV.A. 04-11411-NMG.**

Dec. 5, 2005.

**Background:** Buyer brought state contract, tort and unfair practices suit against inspection firm based on its failure to discover significant structural defects in property. Buyer moved to compel further deposition testimony from corporation and to amend complaint to add additional party defendants.

**Holdings:** The District Court, Gorton, J., held that:
(1) corporation's designation of ill-prepared deponent was not tantamount to failure to testify;
(2) corporation would be required to attempt to find former employee for deposition;
(3) corporation would be required to seek documents relevant to prior inspections, notwithstanding belated claim that task would be onerous; and
(4) buyer did not show good cause to amend complaint to add two corporate employees as additional defendants.

Motions granted in part and denied in part.

West Headnotes

**[1] Federal Civil Procedure** ⌘1325
170Ak1325 Most Cited Cases
Designated corporate deponent's inability to answer questions related to some topics outlined in deposition notice was not tantamount to complete failure of corporation to appear, as would have required corporation to designate new witness, notwithstanding that deponent should have been better prepared, where deponent was able to answer most questions based on best corporation information and there was no bad faith or willful obstruction of discovery process. Fed.Rules Civ.Proc.Rule 30(b)(6), 28 U.S.C.A.

**[2] Federal Civil Procedure** ⌘1325
170Ak1325 Most Cited Cases
Corporation has responsibility to prepare designee for corporate deposition to the extent the matters are reasonably available, whether from documents, past employees, or other sources. Fed.Rules Civ.Proc.Rule 30(b)(6), 28 U.S.C.A.

**[3] Federal Civil Procedure** ⌘1325
170Ak1325 Most Cited Cases
Corporation, whose designated deponent was unprepared to testify about contract discussions between its former employee and plaintiff, would be required to make effort to find and make former employee available for deposition or provide relevant documentary evidence. Fed.Rules Civ.Proc.Rule 30(b)(6), 28 U.S.C.A.

**[4] Federal Civil Procedure** ⌘1325
170Ak1325 Most Cited Cases
Corporation, whose chosen deponent obfuscated on questions related to its prior experience in evaluating reinforced concrete structures due to failure to conduct proper pre-deposition investigation, would be required to produce its files, notwithstanding its belated objection that task would be onerous, particularly where its claim of hardship was unsupported with affidavits or other evidence. Fed.Rules Civ.Proc.Rule 30(b)(6), 28 U.S.C.A.

**[5] Federal Civil Procedure** ⌘1935.1
170Ak1935.1 Most Cited Cases
More stringent good cause standard of pretrial conference rule, not the "freely given" standard of rule generally governing complaint amendments, governs motions to amend after a scheduling order is in place. Fed.Rules Civ.Proc.Rules 15(a), 16(b), 28 U.S.C.A.

**[6] Federal Civil Procedure** ⌘392
170Ak392 Most Cited Cases

**[6] Federal Civil Procedure** ⌘1935.1
170Ak1935.1 Most Cited Cases
Plaintiff did not show good cause to amend complaint to add two employees of corporate defendant as party defendants after scheduling order had entered in case; 15 months had elapsed from

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

233 F.R.D. 62
233 F.R.D. 62, 2005 WL 3406509 (D.Mass.)
**(Cite as: 233 F.R.D. 62, 2005 WL 3406509 (D.Mass.))**

Page 2

filing of complaint, discovery period had expired, and identities and involvement of employees had been known since initiation of suit. Fed.Rules Civ.Proc.Rule 16(b), 28 U.S.C.A.

*63 Steven Joseph Bolotin, Morrison, Mahoney LLP, Boston, MA, for Environmental Management Group, Inc., Defendant.

Eric F. Eisenberg, Hinckley, Allen and Snyder, LLP, Boston, MA, for Berwind Property Group, Inc., Newton Investors Limited Partnership, Plaintiffs.

Lauren Timoney Upton, Hinckley, Allen and Snyder, LLP, Boston, MA, for Berwind Property Group, Inc., Newton Investors Limited Partnership, Plaintiffs.

### MEMORANDUM & ORDER

GORTON, District Judge.

**\*\*1** Plaintiffs Berwind Property Group, Inc. and Newton Investors Limited Partnership (collectively, "Berwind") filed a civil complaint in Massachusetts state court against Defendant Environmental Management Group, Inc. ("EMG") alleging gross negligence, negligence, negligent misrepresentations, breach of contract, fraud in the inducement and violation of M.G.L. c. 93A, all in connection with an agreement between Berwind and EMG for professional services performed in Massachusetts. The case was removed to this Court on June 22, 2004. Berwind now moves the Court 1) to compel further testimony from EMG pursuant to Fed.R.Civ.P. 30(b)(6) and 2) to amend the complaint to include additional defendants. The Court resolves the motions as follows.

### I. *Background*

#### A. Facts

Plaintiff Berwind, an entity having its usual place of business in Philadelphia, Pennsylvania, was the buyer under a purchase and sale agreement of property located in Newton, Massachusetts ("the Property"). Pursuant to the purchase and sale agreement, Berwind created an entity, Newton Investors Limited Partnership, a Pennsylvania limited partnership, which was to take control and ownership of the Property. Defendant EMG is a Maryland corporation having its usual place of business in Baltimore, Maryland.

According to Berwind's complaint, EMG represented to Berwind that a qualified, licensed and professional engineer would inspect and evaluate the Property in addition to providing any necessary engineering services. On or about March 17, 1999 the two parties entered into a contract ("the Contract") by which EMG agreed to provide such services to Berwind for $9,300.

Pursuant to the Contract, EMG was to visit the Property in order to assess the condition of the site and its improvements, to identify deferred maintenance issues and to provide estimates for future maintenance costs relating to the Property. Pursuant to the Contract, EMG was to perform its services in accordance with industry-accepted due diligence practices and to use the degree of skill and care ordinarily exercised by members of the industry.

During March, 1999, EMG employee Sandra Terepka Hoffman ("Hoffman") inspected the parking garage located on the Property and consulted Property personnel and documents related to the Property. Hoffman is not a structural engineer nor does she have training in structural engineering. The result of Hoffman's efforts was a Property Condition Evaluation Report which EMG submitted to Berwind on or about April 6, 1999.

Although the report identified a number of existing and potential problems with the Property, it failed to note that there were significant structural defects with a parking facility as well as waterproofing deficiencies. Berwind allegedly decided to purchase the Property based on the representations of EMG, a purchase which Berwind asserts it would not have made or would have made for less than the $11.7 million had it been apprised of the significant flaws in the Property.

**\*\*2** On or after April 10, 2001, Berwind allegedly became aware that the Property had a number of significant defects requiring expensive repairs. Berwind contends that it has since learned that the Property's structural and waterproofing problems had been *64 readily observed by other engineers who had examined the Property on prior occasions and that Hoffman was a *mechanical* engineer and was, therefore, unqualified to perform a complete structural and waterproofing inspection and evaluation pursuant to the terms of the Contract. Berwind filed suit against EMG as sole defendant on March 8, 2004, and two months later filed an amended complaint and jury demand.

Berwind's complaint includes five Counts upon

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-12393-JGD   Document 54-2   Filed 02/21/2006   Page 4 of 7

233 F.R.D. 62                                                                                                                Page 3
233 F.R.D. 62, 2005 WL 3406509 (D.Mass.)
(Cite as: 233 F.R.D. 62, 2005 WL 3406509 (D.Mass.))

which it seeks relief: 1) negligence and gross negligence, 2) negligent and grossly negligent misrepresentation, 3) breach of contract, 4) fraud in the inducement and 5) unfair and deceptive trade acts and practices in violation of M.G.L. c. 93A. Berwind requests that the Court enter judgment against EMG on the claims asserted in the complaint in an amount over $800,000, together with interest and costs and seeks an award of treble damages and attorneys' fees pursuant to M.G.L. c. 93A. In its answer to Berwind's complaint, EMG denies all materials allegations and offers 19 affirmative defenses ranging from contributory negligence to estoppel.

### B. Procedural History

On or about March 3, 2005, Berwind's counsel served a deposition notice and subpoena pursuant to Fed.R.Civ.P. 30(b)(6) on EMG's counsel. The notice scheduled a deposition for March 29, 2005 and required EMG to designate a witness prepared and competent to testify with respect to specific topics listed in the deposition notice. Those topics included 1) all communications between Berwind and EMG concerning performance of the Property assessment and evaluation, 2) all actions or activities undertaken or conducted by EMG in its analysis and evaluation on the Property, 3) all structural analyses and evaluations that EMG performed on reinforced concrete parking structures between 1996 and 1999 and 4) the education, experience and qualifications of EMG personnel who performed the assessment and evaluation of the Property.

EMG designated Patrick Jarosinski ("Jarosinski") as its Rule 30(b)(6) deponent and produced him for the deposition on March 29, 2005. Hoffman was deposed on the following day and Michael Collins ("Collins"), EMG's program supervisor who oversaw Hoffman's work and verified that the Contract requirements had been satisfied, was deposed by Berwind shortly thereafter.

On May 12, 2005, Berwind's counsel conferred with EMG's counsel by telephone in an effort to narrow the issues with respect to the instant discovery dispute but the parties were unable to reach an agreement or resolve their differences. At no time during the course of this litigation has EMG filed a motion pursuant to Fed.R.Civ.P. 45(c)(3)(A) to quash or modify the subpoena.

### II. *Legal Analysis*

#### A. Plaintiff's Motion to Compel Further Rule 30(b)(6) Deposition Testimony from Defendant and for an Award of Costs

**\*3** Plaintiff's instant motion arises from the testimony proffered by Jarosinski at his deposition on March 29, 2005. Berwind alleges that Jarosinski had no knowledge regarding most of the topics listed in its deposition notice and, moreover, had made no effort to become familiar with material facts reasonably available to the corporation. Specifically, Berwind points to Jarosinski's response to questions regarding the extent of his preparation for his deposition. According to Berwind, with the exception of speaking with EMG's in-house and defense counsel, reviewing EMG's master file and speaking with employees about obtaining the EMG master file from storage and confirming that the EMG file contained a complete version of the Contract, Jarosinski had undertaken no preparation.

Upon learning of Jarosinski's limited preparation, Berwind's counsel offered to suspend the deposition and reconvene at a time when either Jarosinski or such other person designated by EMG had conducted the requisite inquiry to enable EMG's Rule 30(b)(6) designee to provide full and complete testimony. Counsel for EMG objected to any suspension and stated:

> We're not required to create information nor are we required to go and do an overly **\*65** diligent search to respond to things that we don't think are relevant.

EMG's counsel stated that they had provided "a witness who's able to speak as best as anyone can without doing specific research", therefore, it had met its obligation under Rule 30(b)(6).

Berwind's counsel continued with the deposition but asserts that Jarosinski testified repeatedly that he had no knowledge relating to the topics outlined in the deposition notice. Jarosinski also acknowledged that there were other persons at EMG who might have more pertinent knowledge and that there were other documents that he had not reviewed and were not produced by EMG that contained relevant, requested information.

Rule 30(b)(6) allows private corporations such as EMG to designate individuals to testify on their behalf. Another session of this Court has noted:

> Rule 30(b)(6) explicitly requires [a company] to have persons testify on its behalf as to all matters known or reasonably available to it and, therefore, implicitly requires persons to review all matters known or reasonably available to it in preparation

233 F.R.D. 62                                                                                                      Page 4
233 F.R.D. 62, 2005 WL 3406509 (D.Mass.)
**(Cite as: 233 F.R.D. 62, 2005 WL 3406509 (D.Mass.))**

for the 30(b)(6) deposition. This interpretation is necessary in order to make the deposition a meaningful one and to prevent the "sandbagging" of an opponent by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before trial. This would totally defeat the purpose of the discovery process.
*Calzaturficio S.C.A.R.P.A. v. Fabiano Shoe Co., Inc.*, 201 F.R.D. 33, 36 (D.Mass.2001) (quoting *United States v. Taylor*, 166 F.R.D. 356, 362 (M.D.N.C.1996)). The burden on the designee is significant but appropriate given that he/she speaks for (and binds) the corporation.

[1] The facts of this case make it clear that Jarosinski was less than appropriately knowledgeable and forthcoming. EMG should have done a better job preparing him for his deposition. Nevertheless, his failure or inability to testify fully is not, as this Court has noted in the past, "tantamount to a complete failure" of the corporation to appear. *United States v. Mass. Indus. Fin. Agency*, 162 F.R.D. 410, 412 (D.Mass.1995). Jarosinski had not worked on the project at issue but had reviewed EMG files related to the transaction, consulted with inside and outside counsel for EMG and answered most questions based on the best corporate information available to him. The Court finds no bad faith on EMG's part nor a wilful obstruction of the discovery process. As a result, this Court will not order EMG to produce another Rule 30(b)(6) deposition witness.

**\*\*4** Nevertheless, EMG is responsible for supplementing Jarosinki's incomplete deposition testimony. For example, Jarosinski had little or no information with respect to communications between Berwind and EMG concerning the Contract. EMG's spokesman at the time was Matthew Dillis ("Dillis"), now a former employee. At his deposition, Jarosinski discussed the forms and notes prepared by Dillis and the procedures that were in place at the time relating to the initiation of such engagements which led to those forms being used. Nonetheless, Jarosinski was unable to testify to the substance of the conversations between Dillis and EMG's representatives.

[2][3] Despite Jarosinski's lack of first-hand information, it is defendant's responsibility to prepare its Rule 30(b)(6) designee "to the extent the matters are reasonably available, whether from documents, *past employees,* or other sources". *Calzaturficio,* 201 F.R.D. at 37 (emphasis added) (quoting *Bank of N.Y. v. Meridien BIAO Bank Tanz., Ltd.,* 171 F.R.D. 135, 151 (S.D.N.Y.1997)). *See also Mass. Indus. Fin Agency,* 162 F.R.D. at 412 (rejecting corporation's arguments that it was not required under Rule 30(b)(6) to educate its witness about actions taken by former employees of the corporation). EMG apparently made no effort to obtain any information from Dillis for Jarosinski's deposition and must therefore now make a good faith effort to find and/or make available Dillis for his deposition or, in the alternative, provide relevant documentary evidence to Berwind.

[4] Similarly, it is clear that Jarosinski obfuscated on questions relating to EMG's prior experience in the evaluation of reinforced concrete parking structures in the **\*66** three years prior to the Contract. Jarosinski lacked information relating to that topic due to his failure to conduct a thorough pre-deposition investigation. Although such preparation would have required more work on his part, it is required of a Rule 30(b)(6) designee.

EMG responds that the only way it could obtain "the type of information sought would be to review thousands of files, located in archives nationwide, going back 6 to 9 years". It remains to be seen, however, how onerous a task that would be, especially given the fact that at no time did EMG move this Court to quash or modify the subpoena. EMG asserts that the hardship is "self-evident", but without affidavits or other evidence of undue expense or burden, EMG's claims are unsupported and therefore unpersuasive. Thus, EMG will promptly supplement Jarosinski's testimony with respect to its prior experience in the evaluation of reinforced concrete parking structures from 1996-1999.

As to the remaining topics of inquiry, EMG has met its obligations under Rule 30(b)(6). With respect to the actions or activities undertaken by EMG in its analysis and evaluation of the subject buildings, EMG has produced both Hoffman and Collins for their depositions. Whatever gaps existed in Jarosinski's testimony on those topics were addressed adequately by Hoffman and Collins. Moreover, Jarosinski, Hoffman and Collins sufficiently addressed questions relating to the education, experience and qualifications of EMG personnel who performed services under the Contract. That Berwind may be unhappy with those answers is not the Court's concern and it will not order EMG to supplement those responses.

**B. Plaintiff's Motion to Amend the Complaint**

**\*\*5** At issue in plaintiffs' motion to amend is a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

233 F.R.D. 62                                                                                                                                           Page 5
233 F.R.D. 62, 2005 WL 3406509 (D.Mass.)
**(Cite as: 233 F.R.D. 62, 2005 WL 3406509 (D.Mass.))**

request to join as parties two current employees of EMG, Hoffman and Collins. That request is made after depositions were taken of those employees and following the discovery deadline. EMG asserts that the motion to add Hoffman and Collins as individual defendants is 1) moot as a matter of law, 2) unduly prejudicial and 3) made in bad faith solely to harass the defendant and its employees.

[5] According to Fed.R.Civ.P. 15, leave to amend will be "freely given when justice so requires" unless the amendment "would be futile or reward, *inter alia*, undue or intended delay". *Resolution Trust Corp. v. Gold*, 30 F.3d 251, 253 (1st Cir.1994). Notwithstanding this liberal amendment policy, it is the more stringent "good cause" standard of Fed.R.Civ.P. 16(b), not the "freely given" standard of Rule 15(a), that governs motions to amend after a scheduling order is in place. *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 154-155 (1st Cir.2004). The "good cause" standard under Rule 16(b) emphasizes the diligence of the party seeking amendment rather than the "freely given" standard of Rule 15(a) which limits denial mostly to the bad faith of the moving party or prejudice to the opposing party. *Id.* at 155.

[6] The Court entered a scheduling order in this case on October 7, 2004. Thus, it reviews plaintiff's motion to amend the complaint under the "good cause" standard of Fed.R.Civ.P. 16(b).

> The First Circuit Court of Appeals has held that [W]here...considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has the burden of showing some "valid reason for his neglect and delay".

*Hayes v. New England Millwork Distribs., Inc.*, 602 F.2d 15, 19-20 (1st Cir.1979). *See also Grant v. News Group*, 55 F.3d 1, 6 (1st Cir.1995) (affirming the district court's denial of a motion to amend that had been submitted 14 months after the filing of the initial complaint and after the close of discovery); *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 933 (1st Cir.1983) (deeming a 17-month delay between the initiation of the action and filing a motion to amend, served ten days prior to the close of discovery, to be undue).

In fact, the First Circuit, when confronted with a virtually identical timeline to the instant case in *Acosta-Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49 (1st Cir.1998), affirmed the district court's denial of plaintiff's *67 motion to amend. Given that 1) 15 months has elapsed between the time of the original complaint and plaintiffs' instant motion to amend, 2) one year has elapsed between the time of plaintiffs' first amendment and the instant motion and 3) the discovery period has expired, plaintiffs have the burden of demonstrating to this Court a valid reason for their neglect and delay in filing a motion to amend to include additional defendants.

This Court is unaware of any such valid reason. The identities and involvement of Hoffman and Collins have been known to the plaintiffs since the filing of their complaint in March, 2004. The propriety of adding two new defendants did not just become obvious nor were plaintiffs prevented from naming Hoffman and Collins as individual defendants at the initial filing of the complaint.

**\*\*6** Plaintiffs argue that they did not know until Hoffman's deposition that she was not a structural engineer and had no expertise in structural engineering but their position is belied by the record. Specifically, plaintiffs submitted the First Affidavit of Lauren Timoney Upton in relation to their Motion to Compel Further Rule 30(b)(6) Deposition Testimony. Attached to that affidavit as Exhibit Three is EMG's Property Condition Evaluation. That report includes the resume of Ms. Hoffman (nee Terepka) which specifically identifies her background as a mechanical engineer. Moreover, page 3 of that report includes a specific recommendation by EMG to Berwind to "[r]etain [a] structural engineer to review parking garage drainage and construction".

Plaintiffs cannot now claim that they had no way of knowing that Hoffman lacked expertise in structural engineering when they had that information at the time of EMG's evaluation in April, 1999. Thus, Berwind does not have "good cause" for failing to pursue purported claims against Hoffman or Collins when this action was initially brought and the motion to amend will be denied.

### ORDER

In accordance with the foregoing, plaintiff's Motion to Compel Further Rule 30(b)(6) Deposition Testimony from Defendant (Docket No. 19) is **DENIED**, provided however that defendant shall, on or before January 17, 2006,

1) make a good faith effort to find and make available Matthew Dillis for his deposition and supplement by the production of documentary evidence the information provided by the Rule 30(b)(6) witness with respect to its communications with plaintiffs relating to the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

233 F.R.D. 62 Page 6
233 F.R.D. 62, 2005 WL 3406509 (D.Mass.)
**(Cite as: 233 F.R.D. 62, 2005 WL 3406509 (D.Mass.))**

Contract; and

2) supplement for Berwind information with respect to its prior experience in the evaluation of reinforced concrete parking structures between 1996 and 1999.

Plaintiff's Motion to Amend the Complaint (Docket No. 23) is **DENIED**.

**So ordered.**

233 F.R.D. 62, 2005 WL 3406509 (D.Mass.)

**Motions, Pleadings and Filings (Back to top)**

• 1:04cv11411 (Docket) (Jun. 22, 2004)

• 2004 WL 2777899 (Trial Pleading) Answer and Jury Demand of Defendant Environmental Management Group, Inc. d/b/a EMG to Plaintiffs' First Amended Complaint (Jan. 01, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.